## Case No. 15,281.

UNITED STATES v. HALL.

[9 Am. Law Reg. 232.]

Circuit Court, E. D. Pennsylvania. 1844.

POST OFFICE—PRIVATE MAIL CARRIAGE—CARRIERS' LIABILITY—NOTICE—SENDER OF LETTERS.

1. If a passenger in a railroad car or steamboat, passing over a post-road, carry letters, without the knowledge or consent of the proprietor of such car or boat, or any of his servants, the owner does not incur the penalty prescribed by the nineteenth section of the act of congress of the 3d of March, 1825 [4 Stat. 107].

2. If the owner of the car or steamboat be not liable, under the nineteenth section of the act, no penalty is incurred by the person who sends such letters, under the twenty-fourth section.

3. But if a person be openly engaged in the business of private letter carrying over the post-roads of the United States, and a railroad company be notified by public advertisement, and by the agent of the post-office department, that the party and his agents are engaged in such business, they will be liable to the penalty prescribed by the nineteenth section, for conveying such agents carrying letters.

4. And the company being liable under this section, the person employing such agents in the transportation of letters over a post-road, becomes liable under the twenty-fourth section.

[Cited in U. S. v. Kochersperger, Case No. 15,-541.]

This was an action [by James W. Hall] to recover a number of penalties for a violation of the twenty-fourth section of the act of congress of the 3d of March, 1825. There was a special verdict, by agreement of the parties, which is fully stated in the opinion of the court; and the cause is now heard on a motion to enter judgment upon the verdict in favor of the United States.

George M. Dallas and Henry M. Watts, for the United States.

John Sergeant and O. F. Johnson, for defendant.

RANDALL, District Judge. This action is brought to recover the sum of two thousand dollars, alleged by the United States to have been forfeited by the defendant, for various breaches of the provisions of the act entitled "An act to reduce into one the several acts establishing and regulating the post-office department," approved March 3d, 1825, the nineteenth section of which enacts, "that no stage or other vehicle, which regularly performs trips on a post-road or on a road parallel to it, shall convey letters, nor shall any packet-boat or other vessel which regularly plies on a water declared to be a post-road, except such as relate to some part of the cargo: for the violation of this provision, the owner of the carriage or other vehicle or vessel shall incur the penalty of fifty dollars; and the person who has the charge of such carriage or vehicle, or vessel, may be prosecuted under this section, and the property in his charge may be levied on and sold in satisfaction of the penalty and costs of suit: provided, that it shall be lawful for any one to send letters by special messenger." And by the twenty-fourth section, it is declared, "that every person who, from and after the passage of this act, shall procure and advise and assist in the doing or perpetration of any of the acts or crimes by this act forbidden, shall be subject to the same penalties and punishment as the persons are subject to, who actually do or perpetrate any of the said acts or crimes, according to the provisions of this act." When the cause came on for trial, the parties agreed that the jury should find the following facts in the nature of a special verdict, viz.: "That the above-named defendant did, on the 5th day of July last, enter upon the business of conveying letters out of the mails of the United States of America, between the cities of Philadelphia and New York, for all persons who would pay him at the rate of six and a quarter cents for each single letter; and in pursuance thereof, did establish offices in the said cities of Philadelphia and New York, (as will appear by the printed advertisements annexed,) and that the said defendant has ever since, daily, for forty successive days, been employed by himself and his agents in conveying letters for hire out of the mails of the United States, in certain steamboats and railroad cars, between the said cities of Philadelphia and New York, and of delivering the same to the person or persons to whom said letters were directed, and that the letters aforesaid did not relate to any part of the cargo. That the steamboats and railroad cars aforesaid were owned by the Camden and Amboy Railroad and Transportation Company, and that the said steamboats plied regularly on a water, and the said railroad cars performed regular trips on a road, which said water and road were declared by acts of congress to be a post-road of the said United States. The said defendant was not a member of said company, nor did he own all or any part of said steamboats and railroad cars. While engaged in the conveyance of letters, as aforesaid, the said defendant and his agents paid the said Camden and Amboy Railroad and Transportation Company the usual fare paid by passengers over the road, for conveying him and them between the said cities of Philadelphia and New York. The said Camden and Amboy Railroad Company were not engaged in the business, and did not participate in the profits of conveying the letters aforesaid; but were notified by public advertisements of the said defendant, and by the agents of the post-office department of the United States, that the said defendant and his agents were employed in the said business of conveying letters as aforesaid. And the jurors aforesaid do further find, that, at the time aforesaid, there was a contract under date of the —— day of ——, between the postmaster-general of the United States and the said Camden and Amboy Railroad and Transportation Company, for the transportation of the mails of the United States between the said cities of Philadelphia and New York, in the same steamboats and railroad cars which conveyed the letters of the defendant, as aforesaid. And the said jurors do further find and present, as part of their special verdict, certain acts of the legislatures of Pennsylvania and New Jersey, relating to the said Camden and Amboy Railroad and Transportation Company, together with the charter of the same."

The district attorney moved for judgment in favor of the United States on this verdict,

which the counsel for the defendant resist and contend—first, that if the act of 1825 is so construed, as to give to congress the exclusive power to establish and regulate post-roads, then it is unconstitutional and void; and if not so construed, then the defendant has committed no offence.

The eighth section of the first article of the constitution of the United States declares, among other things, that congress shall have power to establish post-offices and post-roads, "and to make all laws which shall be necessary and proper for carrying into execution the foregoing powers." Without undertaking now to examine the cases in which the last branch of this section has received a construction in the courts of the United States, and admitting that the phraseology of the act of 1825 is to be construed, as contended for by the counsel of the United States, I do not feel such a "clear and strong incompatibility" between the constitution and the act of congress so construed as will authorize me to declare the act void. Fletcher v. Peck, 6 Cranch [10 U. S.] 87. It is not upon slight implication and vague conjecture that the legislature is to be pronounced to have transcended its power; the presumption is always in favor of the validity of the law, if the contrary is not clearly demonstrated [Cooper v. Telfair] 4 Dall. [4 U. S.] 14. It will, therefore, be necessary to consider the second ground of the defence, viz: that admitting the law to be constitutional, the facts found by the jury do not render the defendant liable to any of its penalties.

It is contended by the defendant, that this, being a penal law, is to be strictly construed, and that, unless the owners of the cars knew that the defendant was carrying letters in violation of the law, they were not liable to the penalty provided by the nineteenth section, and that if the owners were not liable under that section, then the defendant cannot be liable under the twenty-fourth. And U. S. v. Kimball [Case No. 15,531], decided by the district court of the United States for the district of Massachusetts, and subsequently affirmed by Judge Story, in the circuit court of the First circuit, has been relied on as sustaining their positions.

In the case of U. S. v. Fisher [Case No. 15,100], tried before me in June last, the same case was relied on by the counsel for the defence, and a newspaper report of the affirmation of the judgment of the district court was produced. In charging the jury, I expressed myself as not satisfied with the reasons given by the district judge for the conclusion at which he had arrived, and expressed a doubt as to the correctness of the newspaper report of the decision of the circuit court; at the same time, I mentioned to the jury, that if the counsel for the defendant could afterwards show me that the distinguished judge, presiding in the circuit court, had expressed a judicial opinion on the subject, I would cheerfully yield my opinion to his. The letter of Judge Story to the postmaster-general of September 4th, 1844, shows that he adopted the opinion of Judge Sprague. The facts, as given in evidence in the Case of Fisher, are similar, and within the principle decided in the Case of Kimball. The same view of the law has since been taken by the learned judge of the Northern district of New York, (Judge Conkling,) in the case of U. S. v. Pomeroy [Id. 16,065]. I, therefore, cheerfully yield my opinion to such authority, and will make the rule to show cause why a new trial should not be granted in Fisher's Case absolute.

It remains to be considered how far the questions decided in the Case of Kimball are similar to those in the present. Judge Story, in his letter to the postmaster-general, says, "I coincide in the opinion of Judge Sprague, and my own opinion was confined to the very question decided by him."

The questions decided by Judge Sprague, are: (1) That if a passenger in a railroad car or steamboat, passing over a post-road or route, carry a letter without the knowledge or consent of the owner of the car or steamboat, or any of his agents or servants, such owner is not liable to the penalty provided by the nineteenth section of the act of 1825. (2) That such knowledge or assent are not to be presumed from the facts admitted in the case: and, (3) That the person who sends such letter by such passenger is not liable to the penalty provided by the twenty-fourth section of said act, unless the owner of the car or steamboat is liable to the penalty provided by the nineteenth section.

The facts in that case, as reported in the opinion of Judge Sprague, were, that the defendant sent a letter from Boston to New York, by a person who went as a passenger in the car, and who received no compensation for carrying the letter; but the defendant had received compensation therefor, and his stamp, indicating the fact, was upon the letter. The person who carried the letter had no connection with the owners of the car or their agents, except as a passenger. The owners had previously advertised that they would not take passengers who would convey letters contrary to law, and enjoined all persons in their employment not to receive them; neither the owner nor their agents had any knowledge of the conveyance of said letters.

The facts found by the jury, in the present case, differ in many particulars from that. Instead of sending a single letter by a passenger, the defendant entered upon the business of conveying letters out of the mail, established offices for that purpose, and in pursuance of what, in his advertisements, he calls his "independent mail arrangements." was, by himself and his agents, employed "for forty successive days" in carrying letters out of the mails of the United

States. That this was contrary to the spirit of the act of 1825, can hardly be contended. But it is said, that act being highly penal is to be strictly construed, and unless the defendant is also within the letter of the law, he may defy its spirit with impunity. But notwithstanding this rule, the intention of the law-makers must govern in the construction of penal as well as other statutes; they are not to be construed so strictly as to defeat the obvious intention of the legislature; the maxim is not to be applied so as to narrow the words of the statute to the exclusion of cases which those words, in their ordinary acceptation, or in the sense in which the legislature has obviously used them, would comprehend. The intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in words, there is no room for construction. U. S. v. Wiltberger, 5 Wheat. [18 U. S.] 76. Nothing more is meant by the maxim that penal laws shall receive a strict construction, than that they shall not, by what may be thought their spirit or equity, be extended to offences, other than those which are specially described and provided for. A court is not, therefore, precluded from inquiring into the intention of the legislature. However clearly a law may be expressed, this must ever, more or less, be a matter of inquiry. A court is not, however, permitted to arrive at this intention by mere conjecture, but is to collect it from the object which the legislature had in view, and the expressions used, and which should be competent and proper to apprise the community at large of the rule, which it is intended to prescribe for the government. U. S. v. Hatch [Case No. 15,325]. That the intention of the legislature in passing the act of 1825, was to prevent competition with the government on any of the mail routes, cannot be denied; some of the routes are profitable, and produce a revenue to the post-office department; but others are a burden, and exhaust this profit in their support. If the most profitable routes are to be occupied by private individuals or companies, the consequence must be, that the remote routes, although of equal importance to those interested in them, must be abandoned, or supported from the treasury of the United States; which is well known to be contrary to the general policy of the government. But, whatever be the consequence of such a construction, unless the offence of the defendant is within the obvious prohibition of the legislature, he is not liable to the penalty.

The prohibition in the nineteenth section is against "any stage or other vehicle" carrying letters on a post-road; for the violation of this provision, the owner of the vehicle is made liable to a penalty of fifty dollars, which may be recovered in an action against the person having charge of the vehicle, who is not made personally liable; but a judgment against him authorizes a levy on and sale of the vehicle, although not belonging to him. It is said, however, that this judgment cannot be obtained, or the penalty enforced, unless the consent of the owner to the transmission of the letters was first obtained. That the prohibition implies an act, or that the vehicle is but an instrument, and being but an inanimate object, can give no consent or commit any offence; yet, by the act, it is the vehicle or carriage, and not the owner, that is prohibited.

In the case of U. S. v. The Little Charles [Case No. 15,612], the schooner was seized for a violation of the embargo laws, and the libel dismissed by the district court. An appeal was entered to the circuit court, in delivering the opinion of which, Marshall, C. J., observes: "This is not a proceeding against the owner, it is a proceeding against the vessel for an offence committed by the vessel, which is not less an offence, and does not less subject her to forfeiture, because it was committed without the authority and against the will of the owner. It is true, that inanimate matter can commit no offence. The mere wood, iron, and sails of the ship cannot of themselves violate the law. But this body is animated and put in action by the crew, who are guided by the master, &c.;" and the vessel was condemned and forfeited. See, also, [The Palmyra] 12 Wheat. [25 U. S.] 14, 15.

It is further argued, that the owners of the cars were but common carriers, bound to take the passengers without the privilege of examining or detaining their baggage, that there was perfect innocence of intention on their part, and the infliction of a penalty, under such circumstances, would not be consonant to the general principles of jurisprudence or natural equity. There are, however, many cases under the revenue laws, in which a party, with perfect innocence of intention, and without any idea that he is violating the law, becomes liable or subject to a penalty or forfeiture. This is clearly manifested by the act of 3d of March, 1797, which provides a mode for the remission of the fine or forfeiture, where it has been incurred, "without willful negligence or any intention of fraud, in the person or persons incurring the same." 1 Story, 458 [1 Stat. 506]. The nineteenth section of the act, which inflicts this penalty, says nothing about the guilt or innocence of the owners; it says that no stage or other vehicle shall convey letters; and for the violation of this, the owner is made liable for a penalty. In the case of U. S. v. The Malek Adhel, 2 How. [43 U. S.] 210, which was an appeal from the circuit court for the district of Maryland, affirming the judgment of the district court, which condemned the brig for certain alleged piratical acts, it was admitted that the owners never contemplated or authorized said acts, and the equipments of

the vessel, when she left New York, and ever afterwards, were the usual equipments of a vessel of her class, on an innocent commercial voyage, such as that stated in the evidence. In delivering the opinion of the court, Judge Story observes (page 233): "The next question is, whether the innocence of the owners can withdraw the ship from the penalty of confiscation under the act of congress. Here again, it may be remarked, that the act makes no exception whatsoever, whether the aggression be with or without the co-operation of the owners; the vessel which commits the aggression is treated as the offender, as the guilty instrument or thing to which the forfeiture attaches, without any reference whatsoever to the character or conduct of the owner; and this is done from the necessity of the case, as the only adequate means of suppressing the wrong." The same necessity, it appears to me, exists in the present case. Any other construction of the act would, in my opinion, go wholly to defeat its operation and violate its plain import. But the jury have here found that the railroad company were notified by public advertisements, and by the agents of the post-office department of the United States, that the defendant and his agents were employed in the business of carrying letters. Such notice, certainly, would go far to remove any objection to making them liable to the penalty to which, in the cases cited, the owners were subjected, without notice or opportunity to avoid the prohibited act.

It is my opinion, from the facts found by the jury, that the defendant did procure and assist in the doing or perpetration of the acts prohibited by the nineteenth section of the act of 1825, and that by so doing has incurred the penalties claimed by the United States. I feel the less difficulty in coming to this conclusion, as the case has been submitted with a view (whatever may be the result here) of removing it for reconsideration to the supreme court of the United States, whose decision will hereafter insure a uniform course in all the courts of the Union, and where any error or injustice has been committed by this court it will be fully corrected.

Judgment is entered on the verdict in favor of the United States for $2,000.