## Case No. 16,489.

### UNITED STATES v. THOMPSON.

[9 Law Rep. 451.]

District Court, D. Massachusetts. Dec. Term, 1846.

OFFENCES AGAINST POSTAL LAWS—CONSTITUTIONAL LAW—PRIVATE MAIL CARRIERS—POST ROUTES.

1. The act of congress prohibiting the establishment of private expresses is constitutional.

2. If the mail is actually carried over a railroad, under the authority of the post-office department, with the assent of, and by an arrangement with, the railroad corporation, that is sufficient to answer the requirements of the statute, notwithstanding no formal written contract has been made.

3. The establishment of an express, one of the purposes of which is the carrying of letters over such a route, is a violation of the law. Nor does it make any difference, that they are carried without distinct compensation. But the proprietor of such an express might take a document giving him authority to receive merchandise on presenting the same, or a receipt for his own protection for articles delivered.

4. The proprietor of such an express is liable only for acts done or authorized by himself. And if he authorized acts amounting to a violation of the law, he is guilty, although he did not know they would amount to such a violation. And if he authorized the carrying of one class of letters forbidden by law, and his agent carried one of another class, also forbidden by law, mistaking it for one of the former class, he was not criminally responsible therefor.

This was an indictment, alleging that the defendant [James M. Thompson], subsequently to the 3d day of March, 1845, to wit, on the 28th day of July, 1846, at Springfield, did establish a private express for the conveyance of, and cause to be conveyed, and provided for the conveyance and transportation of, by regular trips, and at stated periods and intervals, from one city, town or place in the United States to another, to wit, from Springfield to Chester Village (between which places the United States mail was regularly transported under the authority of the post-office department), letters, and packages of letters, and packets, properly transmittible by mail, and not being newspapers, pamphlets nor magazines; and on the said day, offending against the statute of the United States, by the instrumentality of William E. D. Miller, conveyed a letter from Springfield to Chester Village, which letter was properly transmittible by mail, and was not a newspaper, &c. The second count alleged the carrying of a letter from Springfield to Chester Factories, on the 25th of August, 1846; and the third and fourth counts, the carrying of letters from Springfield to Albany, on the 20th and 26th of August, in the same manner. The indictment was founded on the 9th section of the statute of 1845 [5 Stat. 735], in relation to the post-office department. It was proved that the defendant ran an express over the Western Railroad; but he contended that it was not established for carrying letters, as such, or mailable matter forbidden by law to be carried by a private express. It was also proved that the United States mail was carried over the same route, under an arrangement between the department and the directors of the railroad, and that there had been no failure or irregularity in the transportation from April 1 to the date of the indictment; but no written contract had been executed, and the defendant contended that therefore the railroad was not. a route over which the mail was regularly transported under the authority of the department, within the meaning of the law. There had been some correspondence on the subject, and an attempt to complete a definite contract; but difficulties had arisen in relation to fixing one regular hour for starting through the year. The mail was, however, transported over the road, and a car fitted up for the agents of the department, and payments made quarterly by the department. A letter from Mr. Gilmore to the department was put into the case, dated in June, 1846, stating the difficulties in the way of completing a written contract, and proposing to continue the transportation of the mail as before; and it continued to be so transported. The defendant also contended, and offered evidence to show, that he had directed his agents to carry no mailable matter, and no letters except such as were in the nature of orders for goods to be carried by his express, or of receipts for goods or money delivered, or letters enclosing money, bills, drafts, checks, or notes;—and that, if any other letters were carried by his agents, it was in violation of his instructions, so that he was not responsible therefor. The counsel for the government offered evidence to prove the carrying of all the four letters charged in the indictment, but did not rely upon the last two as sufficiently proved. The defendant further contended, that that part of the stat-

ute whch prohibited the establishment of private expresses, was unconstitutional.

B. Rantoul, Jr., U. S. Dist. Atty.

Rufus Choate and Mr. Ashmun (whose place was taken by Mr. Chapman in the latter part of the trial), for defendant.

SPRAGUE, District Judge, charged the jury (1) that the law in question was constitutional; (2) that if the mail was actually carried over the route in question, under the authority of the post-office department, with the assent of, and by arrangement with the railroad corporation, that was sufficient to answer the requirements of the statute in question, notwithstanding no formal written contract had been executed; and (3) that if Thompson had established an express, of which one of the purposes was the carrying of letters over such a route, he was guilty of a violation of the law, and was liable to a penalty for each letter proved to have been so carried. It was not necessary, in order to constitute the offence, that the carrying of letters should be the sole business of the express; but it was requisite that that should have been one of the purposes. The accidental transmission of a letter was not sufficient, if not authorized by Thompson himself; he must have intended that it should be carried. It was not necessary that he should have intended to violate what he supposed to be the law, but he must have intended to commit an act, which act would amount to a violation of the law. Every one was bound to know the law. The word "letter" had no technical meaning, but must be understood in the sense in which it was generally understood among business men.

It had been argued, that Thompson had a right, as a common-carrier, to carry any papers incidental to that business. The court ruled, that if he merely took a document giving him authority to receive merchandise on presenting the same, as, for instance, a power of attorney,—or if he took a receipt for his own protection, for the delivery of articles carried by him, he had a right so to do. But he must not take a letter from one person to carry it to another, unless it were a letter relating to a cargo or article carried at the same time with the letter. The defendant was not answerable for any acts of his agents, which were not authorized by him, either expressly or impliedly. But if his instructions were in general terms, not to carry any mailable matter, and he still assented to, or approved of, the carrying of what was mailable, whether or not he knew that the laws embraced such matter, he violated the law.

The defendant had contended that no letters were carried by him except letters connected with his business, as a merchandise express, and that for such letters he made no charge, and received the same compensation for transporting merchandise, from those who did and those who did not send letters; and that, under the eleventh section of the statute, he was authorized so to carry them. But the court ruled that the eleventh section did not authorize the defendant to establish an express for the carrying of letters in connection with, or as a part of his business of a merchandise express, although no charge was made for letters as such. That the tenor and scope of the ninth section was to prevent such competition with the post-office department.

The jury, after being out about two hours and a half, returned for further instructions from the court; and were instructed, that it was not necessary that Thompson should know of the individual letter proved to have been carried by his agent, if it was carried pursuant to his authority; and further, that if the defendant had authorized his agent to carry one class of letters forbidden by law, and prohibited him from carrying another class, also forbidden by law, and the agent carried a letter of the second class, mistaking it for one of the first, the defendant would not be criminally responsible therefor, the letter not being carried by his authority, either tacit or express.

The jury returned a verdict of not guilty.