## BLACKHAM *v.* GRESHAM and others.

*(Circuit Court, S. D. New York. June 4, 1883.)*

1. **POSTAL LAWS—PRIVATE POSTAL ROUTES—PROHIBITED BY SECTION 3982, REV. ST.**

   "No person shall establish any private express for the conveyance of letters or packets, or in any manner cause or provide for the conveyance of the same, by regular trips or at stated periods, over any post-route which is or may be established by law, or from any city, town, or place to any other city, town, or place between which the mail is carried."

2. **SAME—LETTER-CARRIERS' ROUTES—POST-ROUTES WITHIN CONTEMPLATION OF STATUTE—ACT OF MARCH 3, 1851, § 10.**

   Upon reference to pre-existing legislation it is made clear that letter-carriers' routes are to be considered post-routes within the meaning of the statute. By the act of March 3, 1851, § 10, (9 St. at Large 591,) the postmaster general was empowered to establish post-routes within cities and towns for receiving, conveying, and delivering of letters by carriers to be appointed by him.

3. **SAME—RIGHT OF SEARCH AND SEIZURE OF MAILABLE MATTER TRANSPORTED IN VIOLATION OF LAW.**

   Sections 4026 and 3990, Rev. St., authorize the postmaster general to empower any special agent or other officer of his department to make searches for mailable matter transported in violation of law, not being in a dwelling-house, and authorizes any special agent, collector, or other customs officer, or United States marshal, or his deputy, to seize all letters and bags, packets, or parcels containing letters which are being carried contrary to law, and detain the same until two months after the final determination of all suits and proceedings which may at any time, within six months after such seizure, be brought against any person for sending or carrying such letters.

Motion for Preliminary Injunction.

*Isaac Angel,* for plaintiff.

*Elihu Root,* U. S. Atty., for defendant.

WALLACE, J. The plaintiff has moved for a preliminary injunction in her suit brought to restrain the defendants from proceeding to make searches and seizures under sections 4026 and 3990 of the Revised Statutes of the United States. These sections authorize the postmaster general to empower any special agent or other officer of his department to make searches for mailable matter transported in violation of law, not being in a dwelling-house; and authorize any special agent, collector, or other customs officer, or United States marshal or his deputy, to seize all letters and bags, packets, or parcels, containing letters which are being carried contrary to law on board any vessel, or on any post-route, and convey the same to the nearest post-office, or, under the direction of the postmaster general or secretary of the treasury, to detain them until two months after

v.16,no.6—39

the final determination of all suits and proceedings which may, at any time within six months after such seizure, be brought against any person for sending or carrying such letters.

The plaintiff is the proprietor of Boyd's City Dispatch, and employs about fifty carriers, who make collections and deliveries daily of letters in the city of New York, for the different persons who employ the plaintiff for the carrying and delivery of letters. These carriers make regular trips, and at stated periods, over the letter-carrier routes in New York city established by the postmaster general. The plaintiff sells stamps to her customers, which the latter affix to their letters, and thereupon the letters are collected and delivered in substantially the same manner as the regular mailable matter of the post-office department. The searches and seizures which are apprehended by the plaintiff, and which she seeks to enjoin, relate to the letters thus conveyed by the plaintiff, the defendants being the postmaster general and other officers acting, or authorized to act, under the sections referred to.

It is contended for the plaintiff that her business is lawful, and that she does not transport mailable matter in violation of law, because letter-carrier routes within cities are not post-routes within the meaning of the statutes of the United States. The case turns, as to this contention, upon the meaning of section 3982 of the Revised Statutes of the United States, which enacts as follows:

" No person shall establish any private express for the conveyance of letters or packets, or in any manner cause or provide for the conveyance of the same, by regular trips or at stated periods, over any post-route which is or may be established by law, or from any city, town, or place to any other city, town, or place between which the mail is regularly carried."

This enactment is a reproduction in the general revision of the statutes of section 228 of the act of March 3, 1872.

A brief reference to pre-existing legislation denotes quite unmistakably that letter-carrier routes were post-routes within the contemplation of that section. By the act of March 3, 1851, § 10, (9 St. at Large, 591,) the postmaster general was empowered to establish post-routes within cities and towns for the receiving, conveying, and delivering of letters by carriers to be appointed by him. By the act of March 2, 1861, § 4, (12 St. at Large, 205,) it was declared that the provisions of section 3 of the act of March 2, 1827, should be applicable to all post-routes which have been, and should thereafter be, established by the postmaster general under section 10 of the act of March 3, 1851; and the effect of this enactment was to prohibit

the setting up of any foot or horse post for the conveyance of letters and packets upon any post-route which theretofore had been or might thereafter be established by the postmaster general within cities or towns for the receiving, conveying, and delivering of letters by carriers.

No clearer recognition of such letter-carrier routes as post-routes could be manifested than is shown by these enactments of 1851 and 1861, and in view of this legislation the decision in *U. S.* v. *Kochersperger*, 9 Amer. Law Reg. 145, rendered in 1860, to the effect that "post-routes" and "post-roads" were not synonymous terms, does not touch the question now presented. The point in that case was whether letter-carrier routes were "post-roads," and it was held that under the postal laws "post-routes" and "post-roads" had distinct meanings; post-routes being the appointed course or prescribed line of mail transportation, and post-roads the highways or public passages employed for that purpose. Undoubtedly the letter-carrier routes in cities were not "post-roads" until they were declared to be so by section 205 of the act of March 3, 1872, but they were "post-routes," because they were recognized as such by the acts of March 3, 1851, and March 2, 1861. The act of March 3, 1872, was a comprehensive revision of the pre-existing postal laws, and section 228 was particularly addressed to enlarging the provisions of section 9 of the act of March 3, 1845, which prohibited private expresses for the conveyance of letters or packets between cities, towns, or other places between which the mail was regularly transported. As enlarged, the prohibition was made to extend to the conveyance of letters and packets by such private expresses over any post-route established by law. Unless the term "post-route" was intended explicitly to refer to routes within cities and towns, the change was superfluous and meaningless, because all other post-routes were necessarily embraced within the scope of the prohibition of the act of 1845. If there are other post-routes within cities than letter-carrier routes, they are not included; but letter-carrier routes must be deemed included, because they had been recognized as post-routes ever since the act of March 3, 1851. Not only is the establishing of a private express for the transmission of mail matter within a city where letter-carrier routes have been established an offense within the language of the existing law, but such a scheme so clearly contravenes the policy of the postal laws that it would be a matter of surprise if congress had intentionally tolerated such a competition with the business of the government.

As pointed out by the attorney general of the United States in 1858, (9 Op. 161,) "the business of carrying letters and other mail matter belongs, exclusively to the government; and in cities and the large towns letter carriers are as much part of the system as the transportation of the mails from one office to another." If private agencies can be established, the income of the government may be so reduced that economy might demand a discontinuance of the system; and thus the business which it is the right and duty of the government to conduct for the interest of all, and on such terms that all may avail themselves of it with advantage, may be handed over to individuals or corporations who will conduct it with the sole view of making money, and who may find it for their profit to exclude localities or classes from the benefit of the service.

It has also been insisted for the plaintiff that the statutes which authorize the searches and seizures apprehended by her are unconstitutional. It is hardly to be expected that a court of equity, which requires suitors to present themselves with clean hands, will lend its aid to protect the plaintiff in the prosecution of a criminal undertaking, or will be zealous, upon a motion for a preliminary injunction, to attempt the grave and delicate responsibility of pronouncing these statutes void which have twice been approved by congress. Provisions for searches and seizures to enforce revenue laws have long been familiar to the legislation of congress; and, as Judge Cooley remarks, (Const. Lim. 304, note,) "the federal decisions go very far to establish the doctrine that in matters of revenue the regulations congress sees fit to establish, however unreasonable they may seem, must prevail."

The motion is denied.