**UNITED STATES POSTAL SERVICE,
Plaintiff-Appellee,**

v.

**Patricia H. BRENNAN and J. Paul Brennan d/b/a P. H. Brennan Hand Delivery, Defendants-Appellants.**

**No. 741, Docket 78–6002.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 22, 1978.

Decided April 13, 1978.

Gerald J. Houlihan, Asst. U. S. Atty., Rochester, N. Y., Richard J. Arcara, U. S. Atty., Western District of New York, Buffalo, N. Y., for plaintiff-appellee.

James M. Hartman, Rochester, N. Y. (Harris, Beach, Wilcox, Rubin & Levey, Michael C. Normoyle, Rochester, N. Y., of counsel), for defendants-appellants.

Mozart G. Ratner, Peter J. Carre, Washington, D. C., for amicus curiae, National Association of Letter Carriers.

Before FRIENDLY, MULLIGAN and MESKILL, Circuit Judges.

MULLIGAN, Circuit Judge:

The facts underlying this litigation are undisputed. Patricia H. Brennan and J. Paul Brennan, doing business under the name of P. H. Brennan Hand Delivery Service (the Brennans), have conducted since March, 1976 in downtown Rochester, New York, a service delivering for compensation letters and small to medium size parcels. They guarantee same day delivery in Rochester for all materials picked up from customers before twelve o'clock noon at a rate which is less than that charged by the United States Postal Service (USPS). On February 23, 1977 USPS brought a civil action in the United States District Court for the Western District of New York seeking permanent injunctive relief prohibiting the Brennans from continued violations of the Private Express Statutes which proscribe the private carriage and delivery of "letters."[1] On March 22, 1977 the Brennans filed an answer which in substance admitted the material facts alleged in the complaint but as a defense urged that the Private Express Statutes were unconstitutional. Cross motions for summary judgment were filed and on December 27, 1977, United States District Judge, Hon. Harold P. Burke, found that the defendants' contentions were without merit. He denied the defendants' motion for summary judgment and granted the government's motion for summary judgment. The Brennans appealed. On January 10, 1978 this court granted a stay of the district court's order and judgment until the argument of this appeal. At that argument on February 22, 1978 this court extended the stay until the determination of the appeal. The judgment of the district court is hereby affirmed and the stay in this matter is vacated.

I

Under the "Private Express Statutes", Congress has granted the United States a

---

1. 39 U.S.C. §§ 601–606; 18 U.S.C. §§ 1693–1699.

monopoly on the conveyance of "letters or packets" and has precluded competition by private express. *National Ass'n of Letter Carriers v. Independent Postal System of America,* 470 F.2d 265, 267 (10th Cir. 1972). Appellants' primary position is that the Constitution did not grant exclusive power to Congress to operate a postal system and that the Private Express Statutes are not "necessary and proper" to execute the constitutional power to establish post offices and post roads.

■ The Constitution does not expressly give Congress "the sole and exclusive right and power" to establish and regulate the carriage of mail as did the Articles of Confederation.[2] However, the postal power, like all other enumerated powers of Congress, "is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the constitution." *Gibbons v. Ogden,* 9 Wheat. 1, 196, 6 L.Ed. 23 (1824) (Marshall, C. J.) (commerce clause). Moreover, the Constitution grants Congress the power to enact all laws it deems necessary and proper to execute its power to establish post offices.[3] The congressional choice, as expressed in the Private Express Statutes, was to retain in the United States an exclusive and monopolistic authority over the delivery of letters. The question is whether that determination was "necessary and proper."

The scope of the necessary and proper clause was indelibly sketched in *McCulloch v. Maryland,* 4 Wheat. 316, 4 L.Ed. 579 (1819) where Chief Justice Marshall gave a broad interpretation to that clause in upholding congressional action under the commerce clause:

> We admit, as all must admit, that the powers of the government are limited, and that its limits are not to be transcended. But we think the sound construction of the constitution must allow to the national legislature that discretion, with respect to the means by which the powers it confers are to be carried into execution, which will enable that body to perform the high duties assigned to it, in the manner most beneficial to the people. Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional.

4 Wheat. at 421 (footnote omitted).[4]

■ There is nothing novel or unprecedented in the governmental monopoly.[5]

---

2. Compare United States Constitution, Art. I, § 8, cl. 7, "The Congress shall have Power . . . To establish Post Offices and post Roads," with The Articles of Confederation, Art. IX, "The United States in Congress assembled shall also have the sole and exclusive right and power of . . . establishing and regulating post-offices from one State to another, throughout all the United States . . . ."

3. United States Constitution, Art. I, § 8, cl. 18 provides, "The Congress shall have Power . . . To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers . . . ."

4. In *McCulloch v. Maryland, supra,* 4 Wheat. at 417, Chief Justice Marshall referred to the power of Congress to establish post offices and post roads: "This power is executed, by the single act of making the establishment . . . . It may be said, with some plausibility, that the right to carry the mail, and to punish those who rob it, is not indispensably necessary to the establishment of a post-office and post-

road. This right is indeed essential to the beneficial exercise of the power, but not indispensably necessary to its existence."

5. The framers must have had in mind the fact that for 150 years, both in Britain and in the colonies, the postal service had been a monopoly of the government and that it had remained a monopoly under the Articles of Confederation. The first act of the new Congress with respect to the postal establishment confirms this conjecture. The act of September 22, 1789, provided that "the regulations of the post-office shall be the same as they last were under the resolutions and ordinances of the late Congress." And the "late Congress," [i.e., the Confederation's Congress] clearly established a postal monopoly. It is hardly likely that the first Congress could have misconstrued the intent of the Founding Fathers on this point.

J. Haldi & J. Johnston, Jr., Postal Monopoly 7 (1974) (footnote omitted).

While we need not demonstrate that today's mail service is the inevitable outgrowth of 4,000 years of postal history commencing in Egypt and Assyria, see C. Scheele, Neither Snow, Nor Rain . . . The Story of the United States Mails 2–10 (1970), it has been noted that private industry could not have attempted to supply the postal requirements of a frontier nation. See W. Rich, The History of the United States Post Office to the Year 1829 at 91–110 (1924). Congress certainly could have determined that something less than a federal monopoly would allow the continuance of an effective postal system. However, the wisdom of the choice is not the question for the court; we may only pass on Congress' power to make it.[6]

The constitutionality of the postal monopoly has been challenged rarely and never successfully.[7] Almost a century ago Boyd's City Dispatch employed some 50 carriers who made daily collections and deliveries of letters in the City of New York in competition with the United States Post Office. The proprietor of the private service sought a preliminary injunction to enjoin the Postmaster General from seizing the mail Boyd's City Dispatch was delivering. No attack was made on the constitutionality of the private express statute, U.S.Rev.Stat. § 3982. Rather, plaintiff sought to distinguish her business from those covered by the statute. The court in *Blackham v. Gresham,* 16 F. 609, 612 (C.C.S.D.N.Y.1883), in an opinion denying the injunction, stated:

> As pointed out by the attorney general of the United States in 1858, (9 Op. 161) "the business of carrying letters and other mail matter belongs *exclusively* to the government; and in cities and the large towns letter carriers are as much part of the system as the transportation of the mails from one office to another." If private agencies can be established, the income of the government may be so reduced that economy might demand a discontinuance of the system; and thus the business which it is the right and duty of the government to conduct for the interest of all, and on such terms that all may avail themselves of it with advantage, may be handed over to individuals or corporations who will conduct it with the sole view of making money, and who may find it for their profit to exclude localities or classes from the benefit of the service. (Emphasis supplied.)

The most recent opinion in point is *United States v. Black,* 569 F.2d 1111 (10th Cir.), cert. denied, —— U.S. ——, 98 S.Ct. 1525, 55 L.Ed.2d 541 (1978). In *Black* the defendants operated a private express conveying letters between the cities of Pittsburgh and Frontenac in the State of Kansas. The defendants admitted that they violated 18 U.S.C. § 1696 but in defense claimed that the statute was unconstitutional. The court held that the postal monopoly was constitutional because it was a valid exercise by Congress of the power granted it by Art. I, § 8. This case is indistinguishable from the present appeal.

We conclude that the postal power, in conjunction with the necessary and proper clause, as interpreted by Chief Justice Marshall in *McCulloch,* authorizes Congress to exercise its power to the utmost extent.

---

**6.** As the Supreme Court has said in upholding the constitutionality of another government-created monopoly:

> But we think it may be safely affirmed, that the Parliament of Great Britain . . . and the legislative bodies of this country, have from time immemorial to the present day, continued to grant to persons and corporations exclusive privileges—privileges denied to other citizens—privileges which come within any just definition of the word monopoly, as much as those now under consideration; and that the power to do this has never been questioned or denied. Nor can it be truthfully denied, that some of the most useful and beneficial enterprises set on foot for the general good, have been made successful by means of these exclusive rights, and could only have been conducted to success in that way.

Slaughter-House Cases, 16 Wall. 36, 66, 21 L.Ed. 394 (1873).

**7.** *United States v. Black,* 569 F.2d 1111 (10th Cir.), cert. denied, —— U.S. ——, 98 S.Ct. 1525, 55 L.Ed.2d 541 (1978); *United States v. Thompson,* 28 F.Cas. 97 (D.Mass.1846) (No. 16,489); *United States v. Hall,* 26 F.Cas. 75 (C.C.E.D.Pa. 1844) (No. 15,281).

The monopoly which Congress created is an appropriate and plainly adapted means of providing postal service beneficial to the citizenry at large. Consequently, the Private Express Statutes are constitutional.

## II

■ Appellants' remaining constitutional arguments are even less persuasive. They rely upon the Tenth Amendment which provides:

The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

However, the postal power is a delegated power and, as we have found under the necessary and proper clause, in determining to occupy the field exclusively in the conveyance of letters, Congress was not exceeding its powers. As the Court stated in *Case v. Bowles*, 327 U.S. 92, 102, 66 S.Ct. 438, 443, 90 L.Ed. 552 (1946):

Since the decision in *McCulloch v. Maryland*, 4 Wheat. (17 U.S.) 316, 420, 4 L.Ed. 579, it has seldom if ever been doubted that Congress has power in order to attain a legitimate end—that is, to accomplish the full purpose of a granted authority—to use all appropriate means plainly adapted to that end, unless inconsistent with other parts of the Constitution. And we have said, that the Tenth Amendment "does not operate as a limitation upon the powers, express or implied, delegated to the national government." (Footnote omitted.)

Since we have decided the creation of a postal monopoly is a proper exercise of power, the Tenth Amendment argument adds nothing of substance to the constitutional issue here, particularly since no threat to state sovereignty is involved. See *National League of Cities v. Usery*, 426 U.S.

833, 842–43, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976); Tribe, Unraveling *National League of Cities:* The New Federalism and Affirmative Rights to Essential Government Services, 90 Harv.L.Rev. 1065, 1067, n.17 (1977).[8]

■ Appellants further urge that by permitting the Postal Service to define letters or packets, see 39 U.S.C. § 401(2); 39 C.F.R. § 310.1, Congress has improperly delegated the legislative authority vested exclusively in it by Art. I, § 1 in violation of the separation of powers doctrine.[9] The legislature has prescribed the general powers of the Postal Service in 39 U.S.C. § 401, including the power "to adopt, amend and repeal such rules and regulations as it deems necessary" in order "to maintain an efficient system of collect[ing,] sorting, and delivering the mail" as called for in 39 U.S.C. § 403(b)(1). "Broad rule-making authority must be allowed a federal agency such as the postal service whose activities are national in scope and are geared to meet varied conditions and circumstances throughout the country." *Rockville Reminder, Inc. v. United States Postal Service*, 350 F.Supp. 590, 593 (D.Conn.1972), aff'd, 480 F.2d 4 (2d Cir. 1973).

The only authorities cited by appellants for their argument on this point are *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935) and *Panama Rfg. Co. v. Ryan*, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935). These were the "only two cases in all American history" which held congressional delegations to public authorities invalid. K. Davis, Administrative Law Text 26 (3d ed. 1972). "Both . . . cases dealt with delegation of a power to make federal crimes of acts that never had been such before and to devise novel rules of law in a field in which there had been no settled law or custom. *[Schechter]* also involved delegation to private groups as well as to public

---

8. Appellants have asserted that the postal power is analogous to the taxing power, which is exercised simultaneously by both the federal government and the individual states. This analogy is patently false. The Constitution provides for a system of dual sovereignties; the power to tax is necessary to the survival of the

federal government and of the states. History demonstrates that the states can survive without running postal services.

9. See generally A. Vanderbilt, The Doctrine of Separation of Powers and Its Present Day Significance (1963).

authorities." They were so distinguished by Mr. Justice Jackson in *Fahey v. Mallonee*, 332 U.S. 245, 249, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947). That distinction is valid here.

In any event, as Mr. Justice Marshall commented in his dissent in *National Cable Television Ass'n v. United States*, 415 U.S. 336, 352–53, 94 S.Ct. 1146, 1156, 39 L.Ed.2d 370 (1974):

> The notion that the Constitution narrowly confines the power of Congress to delegate authority to administrative agencies, which was briefly in vogue in the 1930's, has been virtually abandoned by the Court for all practical purposes, at least in the absence of a delegation creating "the danger of overbroad, unauthorized, and arbitrary application of criminal sanctions in an area of [constitutionally] protected freedoms" . . . . (Footnote and citation omitted.)

There is no palpable abuse here and no congressional abdication. On the contrary, the authority and necessity for USPS to define "letters" in view of the myriad methods and modes of communication which presently exist is obvious. Thus, the delegation is constitutional.

■ Finally, the appellants also claim that since the postal monopoly only encompasses letter mail and permits private competition in the delivery of non-letter mail (e. g., fourth class mail parcels) there is a violation of their Fifth Amendment Equal Protection rights.[10] No authority at all is cited that supports this proposition. As the Supreme Court has often stated, "A classifica-tion 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that *all persons similarly circumstanced shall be treated alike.'* " *Johnson v. Robison*, 415 U.S. 361, 374–75, 94 S.Ct. 1160, 1169, 39 L.Ed.2d 389 (1974) (citation omitted; emphasis supplied). But here the classification is not directed against persons; rather it is based upon types of mail. The Brennans are in no different posture than any citizen who decides to carry letters in violation of the statute. Obviously, the distinction between types of mail is not invidious. No fundamental rights are involved. The reason for the classification is obvious and rational. The carriage of letters in selected areas is *highly profitable compared to the carriage* of bulky materials. This permits a subsidy of sorts to those services which inevitably lose money. The national system requires that distinctions based upon the character of the business be made. *Blackham v. Gresham, supra*, 16 F. at 612. It is the task of Congress and the agency to make the classification, not the courts. See *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

We conclude that the appellants have utterly failed to establish the unconstitutionality of the Private Express Statutes on any basis. While American citizens may properly complain about the cost or inefficiency of mail service, this hardly raises a matter of constitutional proportions. It is a matter for the Congress and not the courts.[11]

---

10. Although the Fifth Amendment unlike the Fourteenth does not have an equal protection clause, the Court has held that the due process clause of the Fifth Amendment prohibits federal action if the same action taken by a state would be proscribed under the Fourteenth Amendment. *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

11. In reaching our conclusion, we do not overlook the paper of Lysander Spooner on "The Unconstitutionality of the Laws of Congress Prohibiting Private Mails", published in 1844 on behalf of the American Letter Mail Company, an organization which sought to establish mails and post offices in competition with those of Congress. Lysander, in addition to his legal arguments, naturally took a Spartan approach suggesting that the expense of the Postal Service, then $12,000 per day, be used as a fund to retire the existing establishment on an annual pension. This compensation was to be paid to the postal employees for "simply getting out of the way of private enterprize [sic]." Id. at 24. He argued:

> Private enterprise has always the most active physical powers, and the most ingenious mental ones. It is constantly increasing its speed, and simplifying and cheapening its operations. But government functionaries,

**718**

Whatever judicial authority we have been referred to or have unearthed supports the proposition that there is no constitutional infirmity in the federal monopoly over the conveyance of letters. The appellants are keenly aware of the absence of any decision suggesting that the Private Express Statutes are unconstitutional. They suggest that on original analysis this court, "attempt the grave and delicate responsibility of pronouncing these statutes void." *Blackham v. Gresham, supra*, 16 F. at 612.[12] However, as Mr. Justice Frankfurter aptly commented in *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 370–71, 79 S.Ct. 468, 479, 3 L.Ed.2d 368 (1959):

> The history of archeology is replete with the unearthing of riches buried for centuries. Our legal history does not, however, offer a single archeological discovery of new, revolutionary meaning in reading an old . . . enactment. The presumption is powerful that such a far-reaching, dislocating construction as petitioner would now have us find . . was not uncovered by judges, lawyers or scholars for [almost two hundred] years because it is not there.

Judgment affirmed and the stay vacated.

secure in the enjoyment of warm nests, large salaries, official honors and power, and presidential smiles—all of which they are sure of so long as they are the partisans of the President—feel few quickening impulses to labor, and are altogether too independent and dignified personages to move at the speed that commercial interests require. They take office to enjoy its honors and emoluments, not to get their living by the sweat of their brows. They are too well satisfied with their own conditions, to trouble their heads with plans for improving the accustomed modes of doing the business of their departments— to [sic] wise in their own estimation, or too jealous of their assumed superiority, to adopt the suggestions of others—too cowardly to

innovate—and too selfish to part with any of their power, or reform the abuses on which they thrive. The consequence is, as we now see, that when a cumbrous, clumsy, expensive and dilatory government system is once established, it is nearly impossible to modify or materially improve it. Opening the business to rivalry and free competition, is the only way to get rid of the nuisance.

12. The statutes referred to there were quite clearly §§ 4026 and 3990 of the Revised Statutes of the United States which authorized the postmaster general or his agents to search for and seize matter being transported in violation of law and not the Private Express Statute (then § 3982 of the Revised Statutes).