The COUNCIL OF GREENBURGH CIVIC ASSOCIATIONS and the Saw Mill Valley Civic Association, Plaintiffs-Appellants,

v.

The UNITED STATES POSTAL SERVICE, Defendant-Appellee.

No. 236, Docket 78–6105.

United States Court of Appeals, Second Circuit.

Argued Oct. 3, 1978.

Decided Oct. 30, 1978.

Irving R. Kaufman, Chief Judge, filed a concurring opinion.

Jon H. Hammer, New York City (E. Payson Clark, Jr., New York City, of counsel), for plaintiffs-appellants.

Mary C. Daly, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., Frederick P. Schaffer, Asst. U. S. Atty., New York City, of counsel), for defendant-appellee.

Before KAUFMAN, Chief Judge, SMITH and MESKILL, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Two "non-partisan civic organizations," threatened with prosecution under 18 U.S.C. § 1725[1] for depositing unstamped notices and pamphlets in approved letter boxes of private homes, sought declaratory and injunctive relief on first amendment grounds in the United States District Court for the Southern District of New York, and moved with supporting affidavits for summary judgment. The court, William C. Conner, *Judge*, dismissed the complaint on a cross-motion under Fed.R.Civ.P. 12(b). We find error in the dismissal at this stage of the case, reverse the order of dismissal and remand for further proceedings.

The motion to dismiss under Rule 12(b) was based on a claimed failure to "state a cause of action," *i. e.*, a failure to state a claim on which relief can be granted. We think, however, that enough is alleged in the complaint to raise the issue of infringement of freedom of communication.

Plaintiffs have alleged that the only practicable method of delivery of their messages to their constituents is hand delivery to the privately-owned mail receptacles of the constituents, and that the enforcement of § 1725 against them deprives them of constitutional rights—including the rights of free speech and free press. The costs and time delays of using the regular mails are claimed to be in practice insurmountable barriers to effective communication by ordinary mail by these plaintiffs. We think these allegations sufficient to survive a Rule 12(b) motion to dismiss.

"A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972), *citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); see also, *Build of Buffalo, Inc. v. Sedita*, 441 F.2d 284 (2d Cir. 1971).

The allegations, though general, are sufficient under this standard. If they were thought deficient in any way, permission to amend should have been granted. The parties are entitled to an opportunity to submit proof as to the extent of the handicap[2] to communication caused by enforcement of the statute in the area involved, on the one hand, and the need for the restriction for protection of the mails, on the other.[3] This is a sensitive first amendment area. Careful balancing of the need for the statute against the statute's constriction of first amendment rights is called for. See *Martin*

---

1. 18 U.S.C. § 1725 provides that:

    Whoever knowingly and willfully deposits any mailable matter such as statements of accounts, circulars, sale bills, or other like matter, on which no postage has been paid, in any letter box established, approved, or accepted by the Postal Service for the receipt or delivery of mail matter on any mail route with intent to avoid payment of lawful postage thereon, shall for each such offense be fined not more than $300.00.

2. Whether the cost and delay occasioned by use of the mails are serious burdens, and whether the burdens can be avoided by alternate means, such as the use of door knobs, door handles, under door delivery, etc. Compare, *Rockville Reminder, Inc. v. United States Postal Service*, 480 F.2d 4, 7–8 (2d Cir. 1973).

3. The problems caused by mail box clutter, security considerations, protection of mail revenues, etc.

v. *City of Struthers,* 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943); *Schneider v. State,* 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); *Wolin v. Port of New York Authority,* 392 F.2d 83 (2d Cir. 1968). Full development of the facts is essential for the court to strike this balance.

We express no opinion, on this record, on the merits of the claim.

Reversed and remanded.

IRVING R. KAUFMAN, Chief Judge (concurring):

I concur in my Brother Smith's clear and succinct opinion. I add these comments only to elaborate on the considerations underlying our conclusion that the two plaintiff civic organizations have stated a constitutionally cognizable claim.

The free expression interest of these associations is not shrouded in obscurity. It is illumined clearly by some of the classic writings on the First Amendment. Freedom of press "necessarily embraces pamphlets and leaflets. These indeed have been historic weapons in the defense of liberty, as the pamphlets of Thomas Paine and others in our own history abundantly attest." *Lovell v. Griffin,* 303 U.S. 444, 452, 58 S.Ct. 666, 669, 82 L.Ed. 949 (1938). And probably the most effective way of ensuring that such literature reaches its intended audience is house-to-house distribution. *Schneider v. State,* 308 U.S. 147, 164, 60 S.Ct. 146, 84 L.Ed. 155 (1939). Indeed, the Supreme Court has declared that "[d]oor to door distribution of circulars is essential to the poorly financed causes of little people." *Martin v. City of Struthers,* 319 U.S. 141, 146, 63 S.Ct. 862, 865, 87 L.Ed. 1313 (1943). Moreover, the individual householder's right to receive information cannot be ignored.

*Id.* at 143, 63 S.Ct. at 865. In sum, "Freedom to distribute information to every citizen whenever he desires to receive it is . . . clearly vital to the preservation of a free society. . . ." *Id.* at 146, 63 S.Ct. at 865.

The two civic associations claim that the only way they can effectively exercise this precious right is by direct deposit of their circulars in the letterboxes of community residents. Thus, the associations are drawn into conflict with the Postal Service, which argues that, unless the leaflets are accompanied by proper postage, this practice violates 18 U.S.C. § 1725. We cannot affirm Judge Conner's order of dismissal unless we hold as a matter of law that, even if the associations prove all their allegations, they have no right to relief. This we have declined to do.

I do not question the power of Congress to establish a monopoly of postal service, *United States Postal Service v. Brennan,* 574 F.2d 712 (2d Cir. 1978). And it is clear that the exercise of that power includes the authority to provide reasonable regulations for unobstructed access to delivery boxes, *Rockville Reminder, Inc. v. United States Postal Service,* 480 F.2d 4 (2d Cir. 1973). But the postal power, no more than any others delegated to Congress, may not be exercised in a manner that violates the fundamental freedoms guaranteed by the First Amendment. *Blount v. Rizzi,* 400 U.S. 410, 416, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971).

It is unnecessary to decide now whether deposit of circulars in letterboxes is so established as a means of communication[1] that it may be restricted only by the narrow category of "time, place, and manner" regulations.[2] At the very least, the Postal Service must show that its asserted interest is substantial enough to outweigh the burden

---

1. Affidavits submitted for the associations asserted that this was a common form of communication welcomed by community residents. The legislative history also indicates that it has been a prevalent practice for several decades, see 75 *Cong.Rec.* 5575–77 (1932); *see also United States v. Brown,* 551 F.2d 236, 240 (8th Cir. 1977) ("non-mail items such as newspapers and circulars are often placed in private mailboxes.").

2. In assessing the constitutionality of such measures, "[t]he crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." *Grayned v. City of Rockford,* 408 U.S. 104, 116, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972).

on free expression. *E. g., Marsh v. Alabama*, 326 U.S. 501, 509, 66 S.Ct. 276, 90 L.Ed. 265 (1946). And in scrutinizing that balance, we must keep our thumb on the First Amendment side of the scales, to guarantee that free expression, the keystone of our constitutional structure, will not be shaken. Kalven, *The Concept of the Public Forum*, 1965 Sup.Ct.Rev. 1, 28.

Given the fundamental right of house-to-house distribution, I believe a crucial consideration is whether the associations have any acceptable alternative to direct deposit in letterboxes. They allege that they do not, and at this stage of the proceedings we cannot be certain that their assertion is unfounded. The affidavit submitted by Fritjof Schroder,[3] an experienced community leader active in both associations, claimed that limited access and vagaries of climate together render alternative means of delivery, such as placement of the material behind screen doors or on driveways, inadequate.

Indeed, it appears that Congress itself, when it enacted the predecessor to § 1725, believed that it was severely restricting the possibility of house-to-house delivery of materials covered by the statute. One of the primary purposes of Congress, the legislative history cited by the Postal Service reveals, was to prevent the loss of postal revenue caused by business concerns that were delivering their commercial matter directly to residents' letterboxes. It is unlikely that Congress believed these companies, barred free access to the receptacles, would continue house-to-house delivery to escape postal charges.[4]

Examining the other side of the scales, none of the interests claimed by the Postal Service is so self-evident that mere assertion of it precludes the associations' claim. The Service cites first the need to keep letterboxes both uncluttered and secure. But without searching inquiry we cannot conclude that these interests are so substantial and so imperiled by the practice in question that they outweigh a free expression claim. Moreover, it is crucial to emphasize that § 1725 does not prohibit deposit of mailable matter in letterboxes, but only requires that all matter so deposited bear proper postage. It is not immediately apparent why deposit of a circular, simply because a postage stamp was affixed, would be less cluttering or endangering to a letterbox.

We are brought, then, to the Service's contention that the prohibition of § 1725 is necessary to protect the postal revenue. Insofar as the statute is intended to prevent commercial concerns from conducting their business via an alternative to postal delivery,[5] this is unquestionably a valid interest.

3. The plaintiff associations submitted affidavits in support of their motion for summary judgment under Fed.R.Civ.P. 56. The Postal Service, which moved for dismissal under Rule 12(b)(6), did not submit affidavits. Judge Conner did not exercise the power to treat the motion as one for summary judgment but grounded his dismissal on Rule 12(b)(6).

4. The plaintiffs may show on remand that the practice has, indeed, been abandoned. It is interesting to note, moreover, that the plaintiff Saw Mill Valley Civic Association, after being warned by the Postal Service that it was violating § 1725, chose to circulate its next message by mail, although it could not afford to reach the entire community by this method, rather than utilizing any alternative means of house-to-house distribution. This case, therefore, appears quite different from *Rockville Reminder, Inc. v. United States Postal Service*, 480 F.2d 4 (2d Cir. 1973), where a newspaper company rejected for its own convenience "other alternatives," besides the two-inch hooks it wanted to fix on mailboxes, for delivering its journal. *Id.* at 7.

5. We need not decide now whether the statute was intended to cover only commercial matter. The question does not appear elementary. It is true that in 1932 the sponsor of a bill worded in terms similar to those of § 1725 opined that it would cover all mailable matter, but he also expressed the belief that social messages "would not be interfered with" and explained that the object of the bill was to prevent the situation "where some large corporation withdraws a volume of mail from the Post Office Department and sets up a service of its own." 75 *Cong.Rec.* 5577 (1932).

In any event, Congress did not enact the 1932 bill. Regulation to similar effect, however, was adopted in 1934 by the Postmaster General. Although a press release listed "political handouts" among the types of matter cluttering mailboxes, the official explanation given by the Third Assistant Postmaster General expressed

Here, however, we are concerned not with bills from public utilities but with civic and political statements of the type that lie at the very core of the First Amendment's concern.[6]

If § 1725 is an attempt to force citizens wishing to make civic or political statements to use the mails rather than exercise their right of house-to-house distribution, it would appear at first blush to be invalid. The Government may not bar access to one forum of expression because it prefers another, *see Thornhill v. Alabama*, 310 U.S. 88, 106, 60 S.Ct. 736, 84 L.Ed. 1093 (1949). This rule seems particularly pertinent when citizens are asked to surrender a fast and inexpensive means of communication as a method of compelling them to patronize a slower and more costly governmental monopoly. "Freedom of speech [and] freedom of the press . . . are available to all, not merely to those who can pay their own way." *Murdock v. Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943).

When we enter the realm of the First Amendment, the rule of judicial deference towards legislative action is modified. The judicial action must ensure that the channels of communication are kept open to the widest extent possible, consistent with the public order and safety.

---

concern only with the practice of business companies. 55 *Postal Bulletin*, Jan. 5, 1934. And when the predecessor of § 1725 passed soon afterwards, the committee report in the House stated concern only over the practice of private delivery adopted by some "[b]usiness concerns, particularly utility companies." F.Rep.No. 709, 73d Cong., 2d Sess.

A final consideration, especially relevant because the Postal Service insists in its brief that the words of the statute are not in themselves perfectly clear, is the long-established rule that, where possible, a statute should be construed to avoid even a serious question of constitutionality. *E. g., Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 75 L.Ed. 598 (1932).

**6.** *See, e. g., Wolin v. Port of New York Authority*, 392 F.2d 83, 90 (2d Cir. 1968). The Supreme Court has recognized that expression does not lose its constitutional protection because it occurs in a commercial context, *e. g., Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 761, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976). Certainly, the Court has never had occasion to suggest that statements of a political and civic nature do not stand on a higher constitutional ground than account statements or other commercial communications. *See id.* at 771–72, 96 S.Ct. 1830, n. 24.