DISTRIBUTION SYSTEMS OF
AMERICA, INC., Plaintiff,

v.

VILLAGE OF OLD WESTBURY,
Defendant.

CV 91–5060 (ADS).

United States District Court,
E.D. New York.

Sept. 30, 1994.

James P. Duffy, Mineola, NY, for plaintiff.

Farrell, Fritz, Caemmerer, Cleary, Barnosky & Armentano, P.C. (John M. Armentano, of counsel), Uniondale, NY, for defendant.

## OPINION AND ORDER

SPATT, District Judge:

Freedom of the press from government imposed prior restraints is a hard fought right of our democracy that the courts must guard with vigilance. As the esteemed commentator of the common law William Blackstone wrote in 1765, "[t]he liberty of the press is indeed essential to the nature of a free state; but this consists in laying no *previous* restraints upon publications, and not in freedom from censure for criminal matter when published." 4 W. Blackstone, Commentaries *151–152.

In the present case, the Court is presented with a constitutional challenge to an ordinance passed by the Village of Old Westbury ("defendant" or "Village") which according to the plaintiff imposes a prior restraint on the press. The ordinance forbids the distribution of "unsolicited print or other written materials" to Village residents who have filed a notice with the Village Clerk requesting that all such materials not be delivered to their homes. The plaintiff moves for summary judgment in its favor pursuant to Fed. R.Civ.P. 56(a), and seeks (1) to have the Village ordinance declared unconstitutional on its face and as applied to the plaintiff, (2) to permanently enjoin the Village from enforcing or attempting to enforce the ordinance, (3) an inquest to prove its damages under 42 U.S.C. § 1983, and (4) attorneys' fees and costs pursuant to 42 U.S.C. § 1988. The defendant moves for partial summary judgment in its favor, contending the ordinance is a constitutionally valid time, place and manner restriction on the distribution of unsolicited written material to Village residents.

## BACKGROUND

### 1. *Procedural History.*

This is the second time that the plaintiff Distribution Systems of America, Inc. ("plaintiff" or "DSA") has appeared before the Court in this case to challenge an ordinance enacted by the Village that allegedly restricts the distribution of DSA's weekly newspaper, *This Week*. The earlier history and facts underlying the present controversy are recounted in the Court's first decision in this matter, reported at 785 F.Supp. 347 (E.D.N.Y.1992), and are briefly summarized here.

DSA distributes newspapers, magazines and other periodicals, including a weekly newspaper entitled *This Week*. According to the complaint, *This Week* contains "substantial timely and topical editorial content and news items of local and general interest." The publication also contains advertisements. A review of a copy of *This Week* submitted

by the plaintiff reveals that the publication contains some local and general news stories, but predominantly carries local advertisements. The complaint further alleges that *This Week* is distributed by numerous independent carriers to homes on Long Island free of charge. According to the plaintiff, delivery of *This Week* can be terminated by calling a telephone number printed at the front of the newspaper.

The plaintiff commenced this action against the Village on December 23, 1991, by filing a complaint challenging, under the First Amendment, the constitutionality of Chapter 149, §§ 149–4 and 149–5 of the Village Code. Those sections of the Village Code essentially provided that it was unlawful for a person or company to solicit or distribute written material on the streets of the Village or at residents' homes without first obtaining a license from the Village. In order to obtain a license, the ordinance required that an application be filed with the Mayor of the Village. The application was to contain various specified information about the applicant, including "such other information as the Board of Trustees may require." After submission of the license application, the Board of Trustees would approve all "bona fide" applicants who complied with the filing provisions.

At the same time that it filed its complaint, DSA moved by an order to show cause to temporarily and preliminarily enjoin the Village from enforcing sections 149–4 and 149–5 of the Village's Code against DSA and its distribution of *This Week*.

The Court heard oral argument on the plaintiff's motion on January 10, 1992, and at that time granted DSA's motion for a preliminary injunction. On February 28, 1992, the Court issued its written decision on the motion. In its decision, the Court first concluded that DSA had standing to challenge the Village ordinance, and that *This Week* was noncommercial speech. *See* 785 F.Supp. at 353. The Court next considered the merits of the controversy, and held that the ordinance at issue violated the First Amendment because it "constitutes a prior restraint, [and] puts unbridled discretion in the hands of the Village Board of Trustees" with re-spect to the issuance of the license. *Id.* at 356.

On February 18, 1992, prior to the Court's issuing its written decision, the Village repealed Chapter 149 and enacted a new ordinance which, according to the Village, corrects the constitutional errors of the old law. It is this new ordinance, entitled Chapter 153 or "Local Law 2," that the plaintiff presently challenges.

The Village moved for summary judgment on June 15, 1992 to dismiss the complaint and vacate the preliminary injunction, on the grounds that the action had become moot as a result of repealing the old law. DSA opposed the motion, and moved to amend the complaint in order to allege that new Local Law 2 also violated the First Amendment. The plaintiff further argued that the case was not moot because the matters of damages and attorneys' fees were unresolved. In a Decision and Order issued on October 10, 1992, the Court denied the Village's motion for summary judgment, and granted the plaintiff's motion to amend the complaint.

### 2. *The Amended Complaint and Local Law 2.*

Local Law 2 essentially makes it unlawful to distribute "unsolicited print or other written materials" to Village residents who have filed a notice with the Village Clerk requesting that all such materials not be delivered to their homes. Prior to distributing written material to Village residents, distributors must first register with the Village Clerk and obtain a list of all such residents who do not want to receive written materials.

According to the law's preamble, the legislative purpose of Local Law 2 is to protect the privacy rights of Village residents who do not wish to receive "unwanted print or other written materials", to "deter the accumulation of unsolicited literature" that might signal a house is unoccupied and thus precipitate a burglary, and "to prevent littering and protect the aesthetic appearance of the Village."

Section 2 of the law provides in relevant part that the Village is to maintain a list of

Village residents who do not want to receive unsolicited written material:

*List of Residents Directing That They Not Receive Unsolicited Print or Other Written Materials.*

A. The Village Clerk shall maintain a list of all Village residents, by address, who have filed a written notice with the Village Clerk requesting that all, or certain, unsolicited print or other written materials not be delivered onto their premises.

Part B of Section 2 provides that the written notice sent to the Village Clerk by the resident shall be effective for two years, and that the list shall be revised from time to time as new notices are submitted. Part B also provides that the Village Clerk need not verify any change in occupancy of a residence, and that the Village shall not be liable for any errors or omissions on the list.

Section 3 of the law provides that no person or company can distribute "any unsolicited print or other written material" upon the property of a Village resident without first registering with the Village Clerk, providing certain information to the Village Clerk, and receiving a copy of the list of residents who do not wish to receive unsolicited material:

*Registration of Distributor of Unsolicited Print or other Written Materials*

A. No person, organization, society, association, company or corporation, or their agents or their representatives, may distribute or deliver any unsolicited print or other written material upon the property of any Village resident without first having registered with the Village Clerk prior to such distribution or delivery. The registration shall be signed and duly acknowledged by a person who is an owner or authorized agent and accepts responsibility for the receipt of the list of residents described in Section 2 hereof and for the compliance by delivery persons and carriers with the provisions of this local law.

B. The registrant shall also provide to the Village Clerk the name of the print or other written material to be distributed, the name, addresses and telephone number of the distributor, a list containing the names and addresses of all carriers and delivery persons who will be distributing or delivering its print or other written material in the Village, and a list of the license plate numbers of any motor vehicles used by the carriers and delivery persons in making their deliveries. The authorized agent shall be responsible for updating and keeping these lists current with the village.

Section 4 is the operative section of the law, and provides that no person or company can distribute "any unsolicited print or other written material" upon the property of a Village resident who appears on the list of residents not wanting such material maintained by the Village Clerk:

*Prohibition on Delivery of Unsolicited Print or other Written Materials to Certain Residents*

No person, organization, society, association, company or corporation, or their agents or representative, including but not limited to the authorized agent described in Sections 3 hereof and the actual deliverer or carrier, shall deliver, distribute, throw, cast or place, or cause or permit to be delivered, distributed, thrown, cast or placed, any unsolicited print or other written material of any nature whatsoever upon the premises of any Village resident who has requested that such print or other written material not be delivered to his premises and whose address has been listed with the Village pursuant to Section 2 hereof and provided to the registrant in accordance with Section 3 hereof.

Section 5 of Local Law 2 forbids delivery of "unsolicited print or other written material" in the Village's public places. It provides that "[n]o person shall throw, cast or place in or upon any Village right of way, street, avenue or highway any unsolicited print or other written material including, but not limited to, newspapers, handbills, circulars advertising and cards." Section 6 provides that anyone who delivers or distributes any unsolicited print or other written materials is responsible for cleaning up and removing such material from the Village public places.

Section 7 of Local Law 2 provides that "[i]t shall be unlawful for any person to throw,

cast or place upon the doorknob or the door of any residence in the Village, any unsolicited print or other written materials whatsoever including, but not limited to, handbills, circulars, advertising, newspapers, and cards."

Section 8 of the law is a severability paragraph. The law apparently does not include a Section 9. Finally, Section 10 provides that whoever violates Local Law 2 shall be subject to a $250 fine for each and every violation, every day the violation continues.

DSA contends, among other things, that Local Law 2 is unconstitutional because (1) it establishes a prior restraint in the distribution of *This Week*; (2) it does not distinguish between commercial or non-commercial speech; (3) it discriminates between mailed and non-mailed material and imposes requirements on non-mailed distributors of written material that are not imposed on distributors of mailed material; (4) it permits the Village to actively solicit residents to cease delivery of *This Week* and other publications; (5) it is vague and does not provide adequate notice of the activity which it prohibits.

DSA further alleges that enforcement of Local Law 2 will have a "chilling effect" on speech because DSA will be deprived of its right to disseminate its views, residents will be deprived of their right to receive such views, and the services of numerous independent carriers and delivery persons will be terminated. Moreover, DSA alleges that enforcing the law will impose a financial loss to DSA and the likelihood of terminating many DSA employees.

Based on these allegations, the complaint sets forth seven causes of action under the First and Fourteenth Amendments. The first cause alleges that Local Law 2 is an unconstitutional prior restraint. The second cause alleges that Local Law 2 is unconstitutionally vague. The third cause alleges that Local Law 2 vests impermissible broad discretion on the Village Clerk regarding whether to permit or deny distribution of *This Week*. The fourth cause alleges that Local Law 2 prohibits the distribution of *This Week*. The fifth cause alleges that Local Law 2 is illegal and void because the Village lacked the power to enact the ordinance under section 10 of the New York State Municipal Home Rule Law, and the law is not a proper exercise of the Village's police power. The sixth cause alleges a claim under 42 U.S.C. § 1983 that the Village acted under color of state law in threatening to prosecute DSA under Local Law 2, and that DSA has been damaged as a result of the Village's actions. The seventh cause seeks attorneys' fees under 42 U.S.C. § 1988. The plaintiff seeks a declaration that the ordinance is unconstitutional on its face and as applied to the plaintiff, permanent injunctive relief enjoining the plaintiff from enforcing the ordinance, damages, attorneys' fees and costs.

## MOTIONS BEFORE THE COURT

The plaintiff moves pursuant to Rule 56(a) for summary judgment in its favor on the complaint. Essentially, DSA contends that Local Law 2 is unconstitutional on its face and as applied to DSA's distribution of *This Week*, and for the same reasons the Court articulated in its earlier decision in this case the ordinance should be declared unconstitutional and the Village permanently enjoined from enforcing it. DSA also contends that it is entitled to damages under section 1983, as well as attorneys' fees and costs.

The defendant responds by moving pursuant to Rule 56(b) for partial summary judgment in its favor on the first five causes of action in the complaint. The Village contends that by enacting Local Law 2, the Village has corrected the constitutional infirmities of the old law, and that the present ordinance is constitutionally valid.

Essentially, the Village contends that Local Law 2 cures the constitutional infirmities of former Chapter 149 in the following salient ways: (1) Local Law 2 repeals the language that the Court found vested discretionary powers in the Board of Trustees, and removes the Board of Trustees from any official role in the registration process; (2) Local Law 2 eliminates the requirement for a license, and only requires that the distributor register with the Village Clerk and provide certain information for identification only; (3) Local Law 2 does not provide any discre-

tion to the Village Clerk; once the distributor has registered and provided the specified information, it must be given the list and allowed to distribute the written material to those residents not appearing on the list; and (4) Local Law 2 is a reasonable time, place and manner restriction, because it (i) provides for a list of residents who affirmatively do not want to receive any unsolicited written material, (ii) provides that the material can not be placed on the doorknob or on the door of the premises only, and otherwise does not restrict the time or place of delivery. According to the defendant, there are currently 284 homes on the list maintained by the Village Clerk.

In addition to the case law cited in support of its allegation that the present scheme of Local Law 2 is constitutional, the defendant also cites to a colloquy from the October, 1992 oral argument on the parties' respective motions to dismiss the case as moot and to amend the complaint. During that colloquy, the defendant alleges the Court opined that Village residents had a right to say they did not want unsolicited delivery of newspapers, and that the Court had no problem with a resident advising the Village he or she did not want unsolicited delivery of material, and of the Village so advising the distributor of the unsolicited material.

Based on these contentions, the defendant moves to dismiss the plaintiff's first five causes of action. With respect to causes one, two and four, the defendant contends that these causes should be dismissed because DSA has no standing to assert these claims. According to the Village, at no time has it ever sought to enforce Local Law 2 against DSA and the distribution of *This Week*. Moreover, the Village contends that the Court's basis for granting standing to DSA earlier in this case—namely, that DSA could facially challenge a statute delegating broad discretion in granting a license, whether or not DSA had applied for a license, *see* 785 F.Supp. at 353—is not applicable any longer, because Local Law 2 is not a licensing statute and does not provide broad discretion to the Village Clerk with respect to her duties under the ordinance. Rather, the defendant

maintains that Local Law is a "registration process."

The defendant contends that the third cause of action in the complaint should be dismissed because Local Law 2 does not, as the cause alleges, vest impermissible broad discretion in the Village Clerk with respect to permitting or denying the distribution of *This Week*. The defendant reiterates that unlike the previous law, Local Law 2 is not a licensing statute.

With respect to the fifth cause of action, the defendant contends that the Village has the authority to legislate Local Law 2, and that in doing so it is presumed to have validly followed the provisions of New York's Home Rule statute. Moreover, the Village contends that there is no merit to the cause of action because Local Law 2 is constitutional.

Finally, the Village requests a hearing on the issues of damages under section 1983 and attorney's fees under section 1988.

## DISCUSSION

1. *DSA's Standing.*

The defendant's contentions concerning DSA's lack of standing are unavailing. According to the United States Supreme Court, "the irreducible constitutional minimum of standing" contains three elements: (1) the plaintiff must have suffered an "injury in fact," namely an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of, namely the injury must be fairly traceable to the challenged action of the defendant; and (3) it must be likely, and not merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, —— U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (citing cases).

The defendant argues in effect that DSA has not suffered an injury in fact because the Village has not sought enforcement of Local Law 2 against DSA, and the ordinance does not grant broad discretion to issue a license. Notwithstanding these contentions, in this Court's view the plaintiff has suffered an

"injury in fact." DSA is prevented from distributing *This Week* in Westbury until it complies with the provisions of Local Law 2, which it challenges as unconstitutional. If it does attempt to distribute *This Week* without such compliance it is subject to a fine for violating the ordinance. The Village concedes that the ordinance applies to DSA's distribution of *This Week.* Thus, there is a concrete, actual and imminent invasion of DSA's rights to distribute its newspaper, which is traceable to the defendant's actions, and which is likely to be redressed by a favorable decision of this Court. Accordingly, DSA has standing to challenge Local Law 2.

### 2. *Constitutional Standard.*

■ There is no doubt that *This Week* constitutes speech that is protected by the First Amendment. Moreover, the publication is *not* commercial speech, because it involves more than just a mere proposal for a commercial transaction. *City of Cincinnati v. Discovery Network, Inc.,* — U.S. —, ——–——, 113 S.Ct. 1505, 1512–13, 123 L.Ed.2d 99 (1993); *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1058 (2d Cir.1993); *Distribution Systems,* 785 F.Supp. at 353.

■ The normal course of inquiry in a case presenting First Amendment issues is to determine whether the regulation is content-based or content-neutral, and then, based on that answer to apply the proper level of scrutiny. *City of Ladue v. Gilleo,* — U.S. —, —, 114 S.Ct. 2038, 2047, 129 L.Ed.2d 36 (1994) (O'Connor, J. concurring). In addition, in order to ascertain what limits, if any, may be placed on protected speech, courts look to the "place" and "character of the property" where the speech occurs, considering the nature of the forum the speaker seeks to employ. *Frisby v. Schultz,* 487 U.S. 474, 479, 108 S.Ct. 2495, 2500, 101 L.Ed.2d 420 (1988) (citing *Perry Education Assn. v. Perry Local Educators' Assn.,* 460 U.S. 37, 44, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983)). The "crucial question" with respect to determining the nature of a place for First Amendment purposes "is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

■ The primary "place" and "property" at issue here are the door, porch or mailbox areas of a Village resident's home. Moreover, because section 5 of Local Law 2 regulates conduct in the Village's streets, highways and right of ways, those public areas must also be considered in a First Amendment analysis of Local Law 2. The forum DSA seeks to employ in these places is a printed newspaper. In the Court's view, the types of properties affected by the ordinance are characterized as traditional "public fora." The streets of a village and a person's doorstep, although residential in nature, have been traditionally devoted to various expressive activities. *See, e.g., Martin v. City of Struthers,* 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943) ("For centuries it has been a common practice in this and other countries for persons not specifically invited to go from home to home and knock on doors or ring doorbells to communicate ideas to the occupants."); *Frisby,* 487 U.S. at 486, 108 S.Ct. at 2503 (classifying picketing, leafleting and soliciting at residential homes as activities conducted in a public forum). Moreover, the manner of expression chosen by DSA, namely distributing a newspaper, is basically compatible with the normal activity surrounding a person's front door, porch and mailbox area.

■ Having decided that the "place" of the speech in this case is a public forum, the Court now turns to a review of the standards applicable to that forum. In a public forum setting, the state cannot enforce a content-based regulation of speech unless the state shows that the regulation is necessary to serve a compelling state interest, and is narrowly tailored to achieve that end. If a regulation purports to regulate the time, place and manner of speech in a public forum, it must be content-neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. *Perry,* 460 U.S. at 45, 103 S.Ct. at 955.

A regulation is content-based if it focuses on regulating the content of the speech being expressed. *Brown v. Glines,* 444 U.S. 348, 364 n. 6, 100 S.Ct. 594, 611 n. 6, 62 L.Ed.2d 540 (1980) (Brennan, J. dissenting). In the Court's view Local Law 2 is not content-based, because it focuses on the circumstances of expressing the speech, namely the distribution of the written material, and not on the speech's content. *See, e.g., Ad World, Inc. v. Township of Doylestown,* 672 F.2d 1136, 1141–42 (3rd Cir.1982), *cert. denied* 456 U.S. 975, 102 S.Ct. 2240, 72 L.Ed.2d 850 (1983) (local ordinance making it unlawful to distribute advertising material to homes without affirmative consent of home occupant is not a content-based regulation). Therefore, at first glance it would seem that if Local Law 2 is narrowly tailored to serve the significant government interests it is purported to serve, and leaves open ample alternative channels of communication, it would be constitutionally valid.

However, this case presents an added level of complexity. The plaintiff also contends that Local Law 2 discriminates between mailed and non-mailed material and imposes requirements on non-mailed distributors of written material that are not imposed on distributors of mailed material. In addition, the Court notes that the ordinance is directed at "unsolicited *print*" and "other *written* materials." Assuming that these undefined terms apply by their plain meaning to printed material that is readable, then Local Law 2 also discriminates between distributors of unsolicited printed material and distributors of unsolicited non-printed material. For example, a company distributing news and advertisements in the form of video or audio tapes to Village residents would not be subject to the provisions of Local Law 2.

In as much as Local Law 2 does differentiate between forms of distribution or the type of material distributed, it is impermissibly underinclusive because it gives one side "an advantage in expressing its views to the people." *Ladue,* —— U.S. at ——, 114 S.Ct. at 2043. It may also run afoul of the Fourteenth Amendment's Equal Protection Clause. *Id.* at —— n. 9, 114 S.Ct. at 2043 n. 9. Constitutional review of Local Law 2 under these circumstances is conducted under the strict scrutiny standard of review: the regulation must be necessary to serve a compelling state interest, and must be narrowly drawn to achieve that end.

In the Court's view however, whether the Village's interests are "compelling" or "significant" is of secondary importance in this case, because under either of the standards of review outlined above Local Law 2 is not narrowly tailored to serve the governmental interests it purports to serve. "A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby,* 487 U.S. at 485, 108 S.Ct. at 2503.

The Village contends that three interests are served by Local Law 2, namely the resident's privacy, preventing burglaries, and maintaining the aesthetic appearance of the Village by preventing littering.

With respect to the contention that Local Law 2 is a reasonable regulation drawn to protect a resident's privacy, the Village argues that preserving the sanctity of the home is an important value, and that people have a right not to be held captive to unwanted speech in their own homes. In support of this contention, the Village relies on two cases where the Supreme Court has considered constitutional challenges to local statutes that forbid picketing outside a person's residence. In the course of these decisions, the Supreme Court explained the governmental interest in protecting the privacy one has in his or her home. *See Carey v. Brown,* 447 U.S. 455, 471, 100 S.Ct. 2286, 2295–96, 65 L.Ed.2d 263 (1980) and *Frisby,* 487 U.S. at 486, 108 S.Ct. at 2503.

The Village further contends that a law forbidding distribution of written material to a person's home is a reasonable time, place and manner restriction of speech if the resident has affirmatively indicated that he or she does not want to receive the material or be solicited. *See, e.g., Rowan v. United States Post Office Department,* 397 U.S. 728, 736–37, 90 S.Ct. 1484, 1490, 25 L.Ed.2d 736 (1970); *Martin,* 319 U.S. at 143, 147, 63 S.Ct. at 863, 865. According to the Village, Local

Law 2 is such a reasonable restriction, because it allows the resident to affirmatively state he or she does not want to receive unsolicited material by being placed on a list, and limits distribution of unsolicited written material to residents who do not appear on such a list.

The Court is unpersuaded by the Village's contentions. In the Court's view, the Village's emphasis on a resident's right of privacy in their own home is inappropriate in this case. The speech at issue here does not intrude into the resident's home in the same way that picketing outside a person's home does. For this reason, *Carey* and *Frisby* are distinguishable. *See Frisby*, 487 U.S. at 485, 108 S.Ct. at 2503 ("[W]e have been careful to acknowledge that unwilling listeners may be protected *when within their own homes....* We have 'never intimated that the visitor could insert a foot in the door and insist on a hearing.' There simply is no right to force speech *into the home* of an unwilling listener.") (emphasis added, citation omitted).

Indeed, the Court believes the Village trivializes the right of privacy by equating the leaving of an unsolicited newspaper on a resident's porch to the kind of privacy intrusion that occurs when someone pickets outside a resident's home. *Accord Albany Welfare Rights Organization v. Wyman*, 493 F.2d 1319, 1323 (2d Cir.1974) (an "extraordinary showing of an invasion of privacy" is needed to overcome the presumption against the constitutional validity of a law prohibiting the distribution of leaflets).

The Court also disagrees with the concept that Local Law 2 is a reasonable time, place and manner restriction because it only precludes distribution to residents who have affirmatively indicated that they do not want to receive unsolicited material. In the Court's view, the Village's reliance on *Martin* and *Rowan* are misplaced.

In *Martin*, the Supreme Court struck down as unconstitutional an ordinance that made it unlawful for any person distributing leaflets and advertisements to ring the doorbell of a home or otherwise summon the resident to receive the material. In the course of its decision, the Supreme Court recognized that "the peace, good order and comfort of the community may imperatively require regulation of the time, place and manner of distribution." *Id.* 319 U.S. at 143, 63 S.Ct. at 863 (citing *Cantwell v. Connecticut*, 310 U.S. 296, 304, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940)). The Supreme Court also noted that any privacy violations and other dangers to the resident arising from door-to-door distribution can be controlled by "leaving to each householder the full right to decide whether he will receive strangers as visitors," and "an explicit command from the owners to stay away." *Martin*, 319 U.S. at 147–48, 63 S.Ct. at 865–66.

In *Rowan* the Supreme Court was faced with a constitutional challenge to a postal statute. The statute mandated that the Postmaster issue, at an addressee's request and upon receipt of a notice from the addressee specifying that the addressee has received advertisements through the mail that he or she has found to be sexually offensive, an order directing the sender not send any further mailings to the addressee. *Rowan*, 397 U.S. at 730, 90 S.Ct. at 1487. Relying on *Martin*, the Supreme Court upheld the statute as constitutional because the statute provided for the home resident to affirmatively indicate he or she did not want the offensive material. *Id.* at 736–37, 90 S.Ct. at 1490.

In the present case, although the Village resident may have given notice that he or she does not want to receive any unsolicited print or written material, the notice is not specific as to any *particular* material, as was the case in *Rowan*. Rather, Local Law 2 covers *all* unsolicited printed or written material, without regard to whether or not the resident is familiar with the publication, or what its contents are. Such a general restriction gives to the Village, in the Court's view, too much control in determining the distribution of "printed" or "written" material to Village residents, and effectively puts the government in the position of regulating the entire flow of printed and written information to Village residents. *See Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 72, 103 S.Ct. 2875, 2883, 77 L.Ed.2d 469 (1983) (federal statute making it unlawful to send unsolicited information concerning contraceptives

struck down as unconstitutional: "[W]e have never held that the Government itself can shut off the flow of mailings to protect those recipients who might potentially be offended.").

Moreover, this Court does not read *Martin* to state that a regulation prohibiting all distribution of materials to a home resident may be a reasonable time, place and manner restriction if the resident has indicated he or she· does not want to receive unsolicited material. In this Court's view, *Martin*—as is the case in *Rowan*—must be read within the context that the homeowner has made an informed decision as to what solicitations he or she is excluding:

> The ordinance does not control anything but the distribution of literature, and in that respect substitutes the judgment of the community for the judgment of the individual householder. It submits the distributer to criminal punishment for annoying the person on whom he calls, even though the recipient of the literature distributed is in fact glad to receive it.

*Martin,* 319 U.S. at 143–44, 63 S.Ct. at 863.

By proscribing the distribution of all unsolicited printed or written material, Local Law 2 restricts written information which Village residents have a right to receive, and if shown might want to receive, but because the information is designated as unsolicited never reaches the residents. This type of scheme potentially covers too much material from being distributed to Village residents, particularly news information they may want to see. In this respect, Local Law 2 "targets and eliminates" more than the exact source of the evil it seeks to remedy, *Frisby,* 487 U.S. at 485, 108 S.Ct. at 2503, and thus is not narrowly drawn to serve the "privacy" interests of Village residents.

■ Similarly, in the Court's view neither is the ordinance narrowly tailored to serve the Village interests in preventing burglaries or litter. With respect to preventing burglaries, the Court is unconvinced that the ordinance will substantially affect the rate burglaries. Indeed, there is an inconsistency in the Village's restricting the distribution of unsolicited material on the premise that such material accumulates at a doorstep or mail-box and may foster a burglary, while allowing the accumulation of solicited material at a mailbox or doorway. *See, e.g., Ad World,* 672 F.2d at 1140.

Likewise, the Court is unconvinced that the ordinance is narrowly tailored to prevent litter. Solicited materials can blow off a porch or mail box and create litter as well. Similar contentions concerning the prevention of litter were rejected by the Supreme Court in *Martin,* 319 U.S. at 143, 63 S.Ct. at 863 (The privilege of the freedom to distribute may not be withdrawn "even if it creates a minor nuisance for a community of cleaning litter from its streets."), and in *Schneider v. State of New Jersey,* 308 U.S. 147, 162, 60 S.Ct. 146, 151, 84 L.Ed. 155 (1939) (the burden imposed on a city for cleaning litter as an indirect consequence of the distribution of leaflets does not outweigh the First Amendment right to distribute information to those who want to receive it; "There are obvious methods of preventing littering. Amongst these is the punishment of those who actually throw papers on the streets.").

■ Finally, the Village contends that the registration provisions in section 3B of Local Law 2, namely that distributors provide identification of the organization, persons and vehicles delivering or distributing the written material, are required in order for the Village to identify who actually is delivering the material, and to ensure that the proper parties are held legally accountable for any wrongdoing in the distribution of materials to town residents. The Court recognizes that requiring distributors to furnish such information may be reasonable in light of the Village's duty to protect its resident's from fraudulent solicitations. *See Cantwell,* 310 U.S. at 306, 60 S.Ct. at 904. Assuming that section 3B purports to serve this interest, as well as the Village's interests in preventing crime and litter, the Court believes that the section is impermissibly underinclusive. *Ladue,* —— U.S. at ——, 114 S.Ct. at 2043. The section does not allow for the registration of distributors of unsolicited mailed material, or the registration of distributors of unsolicited non-printed or non-written material.

Accordingly, for the reasons stated above, it is the Court's view that Local Law 2 is not a reasonable time, place and manner restriction on the distribution of unsolicited print and other written material. Rather, Local Law 2 acts as a prior restraint on the distribution of all written material, because it requires the distributer to first (1) register with the Village Clerk, (2) submit background information, and (3) receive a list of residents who do not want to receive any "unsolicited print or other written material", before being allowed to distribute information to Village residents. This kind of an ordinance is inimical to the freedom of the press, and cannot be constitutionally upheld. *See Ad World*, 672 F.2d at 1141.

## CONCLUSION

The Court acknowledges that the present ordinance is much improved over the licensing scheme that was first enacted by the Village and subsequently struck down by this Court. Indeed, the Court commends the Village's efforts to attempt to arrive at an ordinance that serves the various Village interests without running afoul of the First Amendment. However, it is the Court's opinion that because the press' right to distribute information to the public is such a fundamental First Amendment right, and because door-to-door distribution of written material is an important aspect of public debate and essential to the communications of poorly financed causes, *see Martin*, 319 U.S. at 146, 63 S.Ct. at 865, and *Council of Greenburgh Civic Assns. v. United States Postal Service*, 586 F.2d 935, 937 (2d Cir. 1978) (Kaufman, J. concurring), every attempt must be made to ensure that the government does not restrict from distribution any more information than is truly not wanted by the recipient.

In this case, the ordinance enacted by the Village of Old Westbury would preclude Village residents from receiving printed and written material they have a First Amendment right to receive, on the basis of an uninformed decision by the resident that categorically applies to "unsolicited" printed or written publications. In doing so, the ordinance sweeps with a broad brush, and cuts away at the First Amendment's protection of a free press by precluding efforts to distribute information to Village Residents on important issues facing the community, such as the upcoming referendum on the Nassau County Legislature and the accompanying revisions to the Nassau County Charter.

In light of the difficulties inherent in undertaking to restrict the distribution of newspapers to the public, the Court believes the more prudent approach is for the government to refrain from paternalistically acting on behalf of the community, and to put the decision for rejecting and discarding the unwanted newspaper or leaflet where it belongs, on the recipient. The "short, though regular, journey from mail box to trash can ... is an acceptable burden, at least so far as the constitution is concerned." *Bolger*, 463 U.S. at 72, 103 S.Ct. at 2883 (quoting *Lamont v. Commissioner of Motor Vehicles*, 269 F.Supp. 880, 883 (S.D.N.Y.), *summarily aff'd*, 386 F.2d 449 (2d Cir.1967), *cert. denied* 391 U.S. 915, 88 S.Ct. 1811, 20 L.Ed.2d 654 (1968)); *Ad World*, 672 F.2d at 1141.

Accordingly, for the reasons stated herein, it is hereby

**ORDERED,** that the plaintiff's motion for summary judgment is granted; it is further

**ORDERED,** that Local Law 2 of the Village of Old Westbury is declared unconstitutional under the First and Fourteenth Amendments to the United States Constitution, on its face and as applied to the plaintiff's distribution of *This Week*; it is further

**ORDERED,** that the Village of Old Westbury is permanently enjoined from enforcing or threatening to enforce Local Law 2; it is further

**ORDERED,** that the defendant's motion for partial summary judgment is denied; and it is further

**ORDERED,** that the parties are scheduled to appear before the Court on Friday, December 2, 1994 at 1:30 p.m. for a hearing on the plaintiff's damages under 42 U.S.C. § 1983 and attorneys' fees under 42 U.S.C. § 1988. The plaintiff is to submit its affidavit in support of its request for attorneys' fees and costs by Friday, November 4, 1994.

The defendant is to file any objections by Friday, November 18, 1994.

**SO ORDERED.**