Abigail STORM and William Callaghan, Plaintiffs,

v.

The TOWN OF WOODSTOCK, NEW YORK, John Mower, Supervisor, Town of Woodstock, in his individual and official capacities, and Dale Hughes, Councilperson, Town of Woodstock, in his individual and official capacities, Defendants.

Civil No. 95–CV–785 RWS.

United States District Court, N.D. New York.

Oct. 31, 1996.

Ricken, Goldman Law Firm, Kingston, NY (Alan N. Sussman, of counsel), for plaintiffs.

Horigan, Horigan Law Firm, Amsterdam, NY (John H. Pennock, Jr., of counsel), for defendants.

### MEMORANDUM–DECISION AND ORDER

RALPH W. SMITH, Jr., United States Magistrate Judge.

By Order dated January 25, 1996, this matter was referred to the undersigned by the Honorable Con. G. Cholakis for all further proceedings and the entry of final judgment upon the consent of the parties and in accordance with the provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.

This is a civil rights action in which plaintiffs challenge the constitutionality of a resolution and a local law enacted by the Town Board of the Town of Woodstock, New York (the "Town").

*Parties*

Plaintiffs are residents of the Town, defendant Mower is the Town Supervisor and a member of the Town Board, and defendant Hughes is a Town Councilperson and a member of the Town Board. The Town is also a defendant in this action.

*Background*

Plaintiffs are active participants in outdoor events called "full moon gatherings" which take place, weather permitting, on full moon evenings during spring, summer and fall months. According to plaintiffs, these gatherings are expressive, spiritual and religious in nature. The full moon gatherings at issue in this case are held at a location in the Town commonly referred to as the "Magic Meadow." Those who attend full moon gatherings have, for a number of years, parked their vehicles along the side of a public road that passes near the entrance to the Magic Meadow. The portion of this road that passes within approximately one-half mile of the entrance to the Magic Meadow is hereinafter referred to as the "Road."

On or about August 4, 1994, the Town Board enacted a resolution (the "Resolution") which, *inter alia*, prohibited parking from "sunset to sunrise" along the Road. The individual defendants both voted in favor of the Resolution. Pursuant to the Resolution, various "No Parking Sunset to Sunrise" signs (the "Signs") were erected along the Road. Thus, in order to both attend full moon gatherings and comply with the Resolution, plaintiffs and other full moon gatherers had to park at least one-half mile from the entrance to the Magic Meadow and walk this distance along the Road, at night.

On or about November 19, 1994, plaintiffs attended a full moon gathering at the Magic Meadow and were ticketed for parking their vehicles in violation of the Resolution. These tickets subjected plaintiffs to the jurisdiction of the local criminal court for possible monetary fine. Plaintiffs moved to dismiss the tickets on the ground that the Resolution violated their civil rights. The Town initially opposed plaintiffs' motion, but later withdrew its opposition when it became clear that the Signs should have been erected pursuant to local law rather than the Resolution. As a result, plaintiffs' tickets were dismissed.

The Signs were thereafter removed, but apparently only for a few days. In any event, in May of 1995 the Town Board enacted a local law (the "Local Law") which, *inter alia*, again prohibited parking from "sunset to sunrise" along the Road. The individual defendants both voted in favor of the Local Law, citing "safety" concerns in support of their position. Those who are ticketed for violating the Local Law are subjected to the

jurisdiction of the local criminal court for possible monetary fine. Thus, in order to both attend full moon gatherings and comply with the Local Law, plaintiffs and other full moon gatherers must park at least one-half mile from the entrance to the Magic Meadow and walk this distance along the Road, at night. As of the date of this decision, neither plaintiff has been ticketed for violating the Local Law.

In their amended complaint (the "complaint"), which purports to be brought pursuant to 42 U.S.C. §§ 1983 and 1985, as well as the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb *et seq.* (hereinafter "RFRA"), plaintiffs challenge the constitutionality of both the Resolution and the Local Law.[1] In addition, plaintiffs claim that the Local Law violates their rights under the First, Fifth, Ninth and Fourteenth Amendments, as well as their rights under RFRA.

The complaint seeks declaratory and injunctive relief, compensatory and punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1988. Presently before the court is defendants' motion to dismiss and/or for summary judgment. Defendants' motion raises numerous grounds upon which they believe that plaintiffs' complaint should be dismissed, either in whole or in part.

### Discussion

At the outset, it should be noted that plaintiffs' memorandum of law in opposition to defendants' motion fails to even mention their § 1985 claim. As a result, the court deems this claim to be abandoned. In addition, although the complaint sues defendants Mower and Hughes in both their individual and official capacities, plaintiffs have withdrawn their claims against these defendants in their individual capacities. Thus, before the court even addresses the merits of defendants' motion, all that remains of this lawsuit are plaintiffs' § 1983 claims against the Town and against defendants Mower and Hughes in their official capacities, and plaintiffs' RFRA claim.

1. For purposes of simplicity, the Resolution and the Local Law are hereinafter referred to collec-

### Standing and Ripeness

Defendants claim that since plaintiffs have not yet been penalized for violating the Local Law the instant action should be dismissed on standing and/or ripeness grounds.

### A. Standing

In order to have standing to invoke federal jurisdiction, a plaintiff must establish the following elements:

First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (citations, quotations and footnote omitted).

█ Plaintiffs have established each of these elements. They have demonstrated that they are under imminent threat of suffering a concrete and particularized injury (*i.e.,* that they will receive tickets subjecting them to the jurisdiction of the local criminal court if they park along the Road on the evening of a full moon gathering). In addition, this injury is both traceable to the challenged actions of defendants, and would likely be redressed by a favorable decision in this case.

Defendants claim that since plaintiffs have not yet been penalized for violating the Local Law they have not suffered any "injury in fact." However, such a narrow interpretation of the "injury in fact" requirement has been routinely rejected in cases where the constitutionality of a local law is challenged,

tively as the "Local Law."

*see, e.g., Distribution Sys. of Am., Inc. v. Village of Old Westbury,* 862 F.Supp. 950, 956–57 (E.D.N.Y.1994); *Blue Sky Entertainment, Inc. v. Town of Gardiner,* 711 F.Supp. 678, 686 (N.D.N.Y.1989); *Hoetzer v. County of Erie,* 497 F.Supp. 1207, 1211 (W.D.N.Y. 1980), and is hereby rejected by this court.

## B. Ripeness

■ Defendants also claim that the instant case is not ripe for adjudication because, unless and until plaintiffs are penalized for violating the Local Law, they have not suffered any "real harm." However, it is well settled in this Circuit that plaintiffs need not " 'await the consummation of threatened injury to obtain preventative relief.' " *Valmonte v. Bane,* 18 F.3d 992, 999 (2d Cir.1994) (quotation omitted). Rather, a "claim is ripe if the perceived threat due to the putatively illegal conduct of the [defendants] is sufficiently real and immediate to constitute an existing controversy." *Id.* Plaintiffs have clearly satisfied this standard. Accordingly, the issues in this case are fit for judicial determination.[2]

## Personal Immunity Defenses

■ Personal immunity defenses such as absolute legislative immunity and qualified immunity only protect defendants acting in their individual capacities. *See, e.g., Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991); *Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985). Since plaintiffs have withdrawn their claims against defendants Mower and Hughes in their individual capacities, defendants' claims that these defendants are entitled to absolute legislative immunity and/or qualified immunity are moot. In addition, "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell*[3] ... local government units can be sued di-

rectly for damages and injunctive or declaratory relief." *Graham,* 473 U.S. at 167 n. 14, 105 S.Ct. at 3106 n. 14 (footnote added). As a result, plaintiffs' claims against defendants Mower and Hughes in their official capacities are hereby dismissed as redundant. *See Rini v. Zwirn,* 886 F.Supp. 270, 281–82 (E.D.N.Y.1995); *Orange v. County of Suffolk,* 830 F.Supp. 701, 706–07 (E.D.N.Y.1993).

## Municipal Liability

■ It is well settled "that a municipality is liable for the unconstitutional acts of its legislature even though the legislators themselves are protected by absolute immunity." *Warner v. Orange County Dep't of Probation,* 95 F.3d 202, 210 (2d Cir.1996). *See also Goldberg v. Town of Rocky Hill,* 973 F.2d 70, 74 (2d Cir.1992). As the complaint in this case challenges the constitutionality of the Local Law, plaintiffs have clearly stated a cognizable claim against the Town.

Defendants' claim that plaintiffs have failed to state a cause of action against the Town misinterprets the applicable law. Defendants' argument in this regard is based upon the so-called "failure to train" theory of municipal liability, *see, e.g., City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), which is not applicable to the instant case.

## First Amendment Claims

Plaintiffs' complaint alleges that the Local Law violates their First Amendment rights of free association, free speech and free exercise of religion.

## A. Freedom of Association

■ The mere fact that a government action has an inhibiting effect on a protected form of association does not necessarily mean that it runs afoul of the First Amendment.[4] *See, e.g., Fighting Finest, Inc. v. Bratton,* 95 F.3d 224, 228 (2d Cir.1996). "Though such

---

**2.** In addition, since this case has been pending for well over a year, and is in fact almost trial ready, dismissal for lack of ripeness would, in the opinion of the court, cause undue hardship to plaintiffs.

**3.** *Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

**4.** For purposes of deciding the instant motion the court assumes, as the parties apparently have, that full moon gatherings at the Magic Meadow are a form of association protected by the First Amendment.

inhibiting conduct might make it more difficult for individuals to exercise their freedom of association, this consequence does not, without more, result in a violation of the First Amendment. To be cognizable, the interference with associational rights must be 'direct and substantial' or 'significant.' " *Id.*

In *Fighting Finest, Inc.*, a group of New York City police officers who had formed a boxing team ("FFI") that fought in the name of the New York City Police Department ("NYPD") challenged the Police Commissioner's decision to withdraw the NYPD's official recognition of FFI, prohibit FFI from identifying its activities with the NYPD in any way, and bar FFI from posting any notices of upcoming FFI events on NYPD premises. *Id.* at 226–27.

In affirming the district court's dismissal of the plaintiffs' freedom of association claim, the Second Circuit found it significant that the Commissioner's actions did not "prevent" the plaintiffs from associating together or significantly burden their ability to do so, and that the plaintiffs did not allege that the Commissioner's actions caused them to suspend, or even curtail, their associational activities. *Id.* at 228. Simply stated, the Court found that although the plaintiffs arguably would be "better off" if FFI received official NYPD recognition, "the First Amendment does not compel government to facilitate the ease with which an individual may exercise associational rights." *Id.*

■ In the instant case, as in *Fighting Finest, Inc.*, defendants' actions do not "directly and substantially interfere" with plaintiffs' associational rights. Although the Local Law undoubtedly makes access to the Magic Meadow less convenient for plaintiffs on full moon evenings, it neither prevents full moon gatherers from associating together nor significantly burdens their ability to do

so. In addition, plaintiffs have not alleged that the Local Law has caused them to suspend, or even curtail, their associational activities.

Accordingly, plaintiffs' freedom of association claim is hereby dismissed.

### B. Freedom of Speech

Plaintiffs' freedom of speech claim stands upon the same footing as their freedom of association claim. In other words, although the Local Law undoubtedly makes access to the Magic Meadow less convenient for plaintiffs on full moon evenings, it neither prevents full moon gatherers from engaging in protected forms of speech nor significantly burdens their ability to do so.

Accordingly, plaintiffs' freedom of speech claim is also dismissed.

### C. Free Exercise of Religion

■ A law that burdens a particular religious practice, like a law that has an inhibiting effect on a protected form of speech or association, does not automatically violate the First Amendment. See, e.g., *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993); *Employment Div. v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). While "a law targeting religious beliefs as such is never permissible," *Church of the Lukumi Babalu Aye, Inc.*, 508 U.S. at 533, 113 S.Ct. at 2227; see generally *Braunfeld v. Brown*, 366 U.S. 599, 607, 81 S.Ct. 1144, 1148, 6 L.Ed.2d 563 (1961) (if the purpose of a law is to impede the observance of a particular religion, the law is unconstitutional "even though the burden may be characterized as being only indirect"), a law that has the incidental effect of burdening religion will ordinarily be upheld as long as it is "neutral" and "of general applicability."[5] See *Church*

---

5. Of course, in order to warrant protection under the Free Exercise Clause of the First Amendment, beliefs must be both sincerely held and religious in nature. See, e.g., *Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir.1996); *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir.1984). In their motion, defendants argue that plaintiffs' beliefs are not sincere, and imply that plaintiffs' beliefs are not religious in nature. However, the Second Circuit has consistently held that:

[W]here subjective issues regarding a litigant's state of mind, motive, sincerity or conscience are squarely implicated, summary judgment would appear to be inappropriate and a trial indispensable. The need for a full exposition of facts is profound under such circumstances since determining a man's state of mind is "an awesome problem," capable of resolution only by reference to a panoply of subjective factors. Furthermore, a sojourn into an adherent's

*of the Lukumi Babalu Aye, Inc.,* 508 U.S. at 531, 113 S.Ct. at 2226. "Neutrality and general applicability are interrelated, and ... failure to satisfy one requirement is a likely indication that the other has not been satisfied." *Id.*

In deciding whether a challenged law is neutral:

> Facial neutrality is not determinative. The Free Exercise Clause, like the Establishment Clause, extends beyond facial discrimination. The Clause "forbids subtle departures from neutrality," and "covert suppression of particular religious beliefs." Official action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality. The Free Exercise Clause protects against governmental hostility which is masked as well as overt.

*Id.* at 534, 113 S.Ct. at 2227 (quotations omitted).

Similarly, whether a challenged law is generally applicable is not always readily apparent.

> All laws are selective to some extent, but categories of selection are of paramount concern when a law has the incidental effect of burdening religious practice. The Free Exercise Clause "protect[s] religious observers against unequal treatment," and inequality results when a legislature decides that the governmental interests it seeks to advance are worthy of being pursued only against conduct with a religious motivation.

*Id.* at 542–43, 113 S.Ct. at 2232 (quotation omitted).

■ A law that fails to satisfy either of these requirements is subjected to strict scrutiny, pursuant to which the law "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Id.* at 531–32, 113 S.Ct. at 2226. History has shown that a challenged

law will survive such scrutiny "only in rare cases." *Id.* at 546, 113 S.Ct. at 2233.

■ In the instant case, if plaintiffs can demonstrate that defendants' motivation in enacting the Local Law was to impede plaintiffs' observance of their religion, then the Local Law is unconstitutional. *See id.* at 533, 113 S.Ct. at 2226–27; *Braunfeld,* 366 U.S. at 607, 81 S.Ct. at 1148. In any event, since defendants' motivation in enacting the Local Law is hotly contested by the parties, this issue can only be determined after the finder of fact has had an opportunity to evaluate the parties' credibility. *See, e.g., Frank v. Relin,* 1 F.3d 1317, 1330 (2d Cir.), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993) ("On a motion for summary judgment, the district court's function is to identify questions of fact, not to decide them. Nor may the court make credibility assessments; those assessments are to be made by the finder of fact."); *Patrick,* 745 F.2d at 159.

In addition, genuine issues of material fact exist, precluding summary judgment, with regard to whether the Local Law is neutral and/or generally applicable. Simply stated, plaintiffs are entitled to explore questions such as why the Local Law, which restricts parking in over forty locations throughout the Town, only restricts parking from "sunset to sunrise" in one location (*i.e.,* along the Road).

Accordingly, defendants' motion is denied with regard to plaintiffs' free exercise of religion claim.

*RFRA Claim*

RFRA provides that government may only substantially burden a person's right to exercise his/her religion if the burden to the person (a) furthers a compelling governmental interest, and (b) is the least restrictive means of furthering said interest, even if the burden results from a neutral law of general applicability. *See* 42 U.S.C. § 2000bb–1.

---

mind-set will inevitably trigger myriad factual inferences, as to which reasonable persons might differ in their resolution. Traditionally, this function has been entrusted to the jury.

*Patrick,* 745 F.2d at 159 (citations omitted). *See also Jolly,* 76 F.3d at 476. Accordingly, defendants' motion is hereby denied to the extent that it challenges the sincerity and/or verity of plaintiffs' religious beliefs.

**146**

■ At first glance, RFRA appears to be more protective of religious freedom than the Free Exercise Clause of the First Amendment.[6] However, unlike a plaintiff alleging a Free Exercise Clause violation, "a plaintiff alleging a violation of RFRA must demonstrate that his right to the free exercise of religion has been *substantially* burdened." *Jolly,* 76 F.3d at 476 (emphasis added). "[A] substantial burden exists where the state 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id.* at 477 (quotation omitted). *See also Mack v. O'Leary,* 80 F.3d 1175, 1178 (7th Cir.1996) (examining various courts' treatment of the issue of what constitutes a "substantial burden" under RFRA); *Hicks v. Garner,* 69 F.3d 22, 26 n. 22 (5th Cir.1995) (same).

■ Simply stated, plaintiffs cannot satisfy this standard. Defendants clearly have not put *substantial* pressure on plaintiffs to modify their behavior and to violate their beliefs. *See Jolly,* 76 F.3d at 477. Nor have defendants forced plaintiffs to either abandon one of the precepts of their religion or choose between following the precepts of their religion and forfeiting benefits. *See id.* Rather, as noted above, while the Local Law undoubtedly makes access to the Magic Meadow less convenient for plaintiffs on full moon evenings, it neither prevents full moon gatherers from practicing their religion nor significantly burdens their ability to do so. In addition, plaintiffs have not alleged that the Local Law has caused them to suspend, or even curtail, their religious activities.

Accordingly, plaintiffs' RFRA claim is hereby dismissed.[7]

*Remaining Claims*

■ Although plaintiffs' complaint alleges that defendants have violated their Ninth Amendment right to liberty, as well as their rights to equal protection and substantive due process under the Fifth and Fourteenth Amendments, plaintiffs have utterly failed to demonstrate any basis, either legal or factual, for such claims. Notably, plaintiffs' memorandum of law in opposition to defendants' motion fails to cite a single case in support of any of these claims.

Accordingly, these claims are hereby dismissed.

*Punitive Damages*

■ Finally, plaintiffs' claim for punitive damages is dismissed *sua sponte* on the ground that the Town is the sole remaining defendant in this action, and punitive damages are not available under § 1983 against a municipality.[8] *See, e.g., Graham,* 473 U.S. at 167 n. 13, 105 S.Ct. at 3106 n. 13.

*Conclusion*

For the reasons stated above, it is hereby

**ORDERED,** that defendants' motion to dismiss and/or for summary judgment is granted in part and denied in part, in accordance with this Memorandum–Decision and Order; and it is further

**ORDERED,** that the complaint is dismissed as against defendants Mower and Hughes; and it is further

**ORDERED,** that all of plaintiffs' claims are dismissed with the exception of their free exercise of religion claim.

---

6. As interpreted by the current Supreme Court.

7. In light of this holding, the court need not address defendants' claim that RFRA is unconstitutional.

8. Nor are such damages available against individuals sued in their official capacities. *See, e.g.,* *Yorktown Medical Lab., Inc. v. Perales,* 948 F.2d 84, 89 (2d Cir.1991). Thus, none of plaintiffs' rights in this regard are jeopardized by the court's dismissal, as redundant, of their claims against defendants Mower and Hughes in their official capacities.